**PUBLISH**
**UNITED STATES COURT OF APPEALS**
**Filed 4/29/96**
**TENTH CIRCUIT**

_____

DOUGLAS M. HAINES,                          )
                                            )
    Plaintiff-appellant,                    )
                                            )
v.                                          )      No. 95-8016
                                            )
ANTHONY L. FISHER, individually, and        )
in his official capacity as                 )
Torrington Police Department Sergeant;      )
MIKE ALAN REEVE, individually, and in       )
his official capacity as Torrington         )
Police Department Patrolman; KRAIG          )
DANIEL MURPHY, individually, and in         )
his official capacity as Torrington         )
Police Department Dispatcher; TOWN OF       )
TORRINGTON,                                 )
                                            )
    Defendant-appellees.                    )

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 94-CV-99)

_____

John A. Coppede (Raymond W. Martin of Sundahl, Powers, Kapp and Martin, Cheyenne, Wyoming; and Lowell Fitch, Fitch Law Offices, Torrington, Wyoming, with him on the brief) of Sundahl, Powers, Kapp and Martin, Cheyenne, Wyoming, for defendants-appellees Reeves and Fisher; Mark L. Carman of Williams, Porter, Day and Neville, Casper, Wyoming, for defendant-appellee Town of Torrington.

Walter Urbigkit, Frontier Law Center, Cheyenne, Wyoming, for plaintiff-appellant.

_____

Before **KELLY, BARRETT and JONES\***, Circuit Judges.

_____

**BARRETT**, Senior Circuit Judge.

_____

  \*The Honorable Nathaniel R. Jones, Senior Judge, United States Circuit Court of Appeals for the Sixth Circuit, sitting by designation.

Douglas M. Haines (Haines) appeals from (a) an order of the district court granting summary judgment in favor of the Town of Torrington, Wyoming (Torrington) on his 42 U.S.C. § 1983 and state law claims, and in favor of Anthony Fisher (Fisher), Alan Reeve (Reeve), and Kraig Murphy (Murphy) (collectively "the individual defendants") on his § 1983 claims; (b) a judgment that he recover nothing from Fisher and Reeve; (c) an order and judgment denying his motions for reconsideration and for default judgment against Murphy; and (d) an order denying his motions for new trial and judgment notwithstanding the verdict and for a new trial.

The relevant facts of this case were concisely set forth in the district court's Order of November 22, 1994:

> This case arises out of a practical joke or prank played by three police officers and a police dispatcher on plaintiff [Haines] on February 18, 1994. Plaintiff was the local 7-Eleven clerk and was working the night shift alone on the night of the incident at issue. The three police officers and police dispatcher were employed by the Town of Torrington, Wyoming.
>
> The shift supervisor that evening was Sergeant Tony Fisher, one of the defendants. While he was on duty that night and while he was training Officer Gerrard how to conduct building searches with officer Michael Reeve, defendant Fisher concocted a plan to pull a practical joke on plaintiff.[1] He shared his idea with on duty of-ficers Reeve and Gerrard and dispatcher Kraig Murphy, who all agreed to participate in pulling the practical joke on plaintiff.
>
> The plan called for Reeve to disguise himself as a robber who would hold up the 7-Eleven store during the plaintiff's shift. He wore a trenchcoat belonging to the Town, which was used in its McGruff Crime Prevention program, over the pants and shoes he had worn with his uniform that evening. He did not wear his police uniform shirt, but instead wore a turtleneck. Over his face, Reeve wore a balaclava mask that also belonged to the

---

[1] Prior to the incident, Haines had called the Torrington Police Department and reported that he had observed some suspicious vehicles in a parking lot across the street from the 7-Eleven. Fisher responded to the call and thereafter told Haines that the vehicles were actually police department vehicles and that Haines need not be concerned. Haines argues that the staged robbery was in retaliation for his earlier call.

Town.  He carried the Town's M-16 automatic rifle, loaded with blanks, under the trenchcoat.  On the end of the barrel of the M-16, the defendants had placed a large plastic garbage bag, intended to catch any residue that might result when the blanks were fired.

Murphy, the dispatcher, put the plan into action by telephoning plaintiff at the 7-Eleven and advising him that he should be on the lookout for an individual who was possibly armed in the area of the 7-Eleven store.  Murphy described for plaintiff a man who would look as Reeve would look in his robber regalia.

Reeve had been driven by Fisher to the 7-Eleven in a police car belonging to the Town.  Gerrard drove another Town police car to a location several blocks away from the scene.  Gerrard and Fisher kept watch while Reeve was inside the store to be sure no member of the public saw what was going on and that no one would be hurt by the commission of their prank.

When he entered the store, Reeve was supposed to shoot off the M-16 shortly after entering the store.  However, he forgot that the gun's safety was engaged and the gun would not operate when he attempted to pull the trigger.  Reeve then ordered plaintiff to get off the telephone and to get on the floor.  At some point the M-16 was discharged although there is a factual dispute about when that happened.  Plaintiff claims that Reeve pointed the M-16 at him and discharged the weapon when he was told to get on the ground -- before he recognized that it was Officer Reeve in a robber costume.  Defendants claim that the gun was not discharged until after plaintiff recognized Reeve before becoming prone on the ground, when he rose up and threw a cleaning rag at Reeve and exclaimed, "Nice try, Mouse!"  Defendants contend that the blanks were fired away from plaintiff after he recognized Reeve.  Defendants contend that after the event was over, everyone including plaintiff had a good hearty laugh over the practical joke among good friends.

(Appendix, Vol. III at 727-30) (footnote added).

Rumors of the event circulated in and about Torrington.  Upon inquiry by Chief of Police Billy Janes, Fisher, Reeve, Gerrard and Murphy confessed what they had done and signed written statements regarding the incident.  Following an investigation by the Wyoming Division of Criminal of Investigation (DCI), Fisher and Reeve were terminated.

Thereafter, Haines filed this action against Fisher, Reeve,

and Murphy, in their individual and official capacities, and Torrington seeking damages for violation of his civil rights pursuant to 42 U.S.C. § 1983, alleging that defendants had denied him "of his rights to be free from unreasonable searches and seizures protected by the Fourth Amendment and his due process rights protected by the Fifth and Fourteenth Amendments," (Appendix, Vol. I at 004), and damages for state law claims of negligence and intentional infliction of emotional distress. Haines also sought exemplary or punitive damages for the individual defendants' alleged wilful and wanton misconduct on the basis "that the purpose behind one or more of the [individual] Defendants' conduct was to scare [him] so that he would be intimidated by them and lured into their lurid alternative live style. Plaintiff, a heterosexual, had denied their advances." (Appendix, Vol. I at 006).

Torrington moved for summary judgment and Fisher and Reeve moved for partial summary judgment. The district court granted Torrington summary judgment on all of Haines' claims, and granted Fisher and Reeve summary judgment on Haines' § 1983 claims. Although Murphy did not appear or respond, the court entered judgment in his favor on Haines' § 1983 claims.

The case proceeded to trial on Haines' state law claims of negligence and intentional infliction of emotional distress against Fisher and Reeve. Before submitting the case to the jury, the district court withdrew the issue of negligence from the jury's consideration. (Appendix, Vol. X at 4463).

The jury returned a special verdict finding that: Haines had failed to prove by a preponderance of the evidence that Fisher and/or Reeve had assaulted him; Fisher and/or Reeve had not committed extreme and outrageous conduct on Haines; Haines suffered $0.00 in total damages; and the conduct of Fisher and Reeve did not

amount to willful and wanton misconduct.

Thereafter, the court denied Haines' motion for reconsideration of the partial summary judgment granted in favor of Murphy and granted Haines judgment against Murphy but ordered that Haines recover nothing from Murphy. The court also denied Haines' motion for a new trial and his motion for judgment notwithstanding the verdict.

On appeal, Haines contends that the district court erred when it: (1) granted summary judgment to Torrington on all claims and to the individual defendants on the § 1983 claims; (2) refused to instruct on negligence; (3) submitted the issue of assault to the jury; and (4) failed to award damages against Murphy.

## I.

Haines states that the district court erred when it granted summary judgment in favor of (a) Torrington on his § 1983 claims; (b) the individual defendants on his § 1983 claims; and (c) Torrington on his state law claims.

We review the district court's grant of summary judgment de novo, applying the same legal standards employed by the district court. Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir. 1995). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Hagelin for President Committee of Kan. v. Graves, 25 F.3d 956, 959 (10th Cir. 1994), cert. denied, ___ U.S. ___ (1995).

### a.

Haines reasons that the district court improperly granted

summary judgment in favor of Torrington on his § 1983 claims.

Haines states that municipal liability attaches under § 1983 "where a definite and deliberate choice to follow a course of action is made from among various alternatives for the official or officials responsible for establishing final policy." (Appellant's Brief at 33). Haines also maintains that Torrington had delegated decision making authority to the Chief of Police who had, in turn, delegated that responsibility to the on-shift supervisor, Fisher. He reasons that because Fisher had planned and directed the incident in question, there was a question of fact as to municipal liability for jury determination.

Torrington responds that the district court did not err in granting it summary judgment on Haines' § 1983 claims, inasmuch as it did not have any policy, custom, or practice adopting or approving the activity surrounding the staged robbery, and because its Police Department Standard Operating Procedures absolutely prohibits the conduct in question.[2]  We agree.

In <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658, 690 (1978), the Court, after concluding that municipalities are among the "persons" to which § 1983 applies, held that a municipality is liable under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated." The Court observed that the official policy must be the moving force for the constitutional violation in order to establish the

---

[2]

Torrington's Standard Operating Procedures prohibit, <u>inter</u> <u>alia</u>: commission of any felony or misdemeanor;  any type of misconduct that reflects discredit upon the members as a police officer . . . or upon the department he serves; the discharge of a firearm except for the defense of the officer's life, the defense of the life of another, and when necessary to effect the arrest, capture or prevent the escape of someone for whom the officer has reasonable cause to believe has committed a life threatening felony and whom the officer believes is a serious threat to the officer or others. (Appendix, Vol. II at 403 and 421).

liability of a government body under § 1983. Id. at 694. See Polk County v. Dodson, 454 U.S. 312, 326 (1981).

Applying Monell to the facts herein, we hold that the district court did not err in granting Torrington summary judgment on Haines' § 1983 claims. Haines failed to establish that the staged robbery in any way implemented or executed a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" or that the official policy was the moving force behind the alleged constitutional violation. Torrington, on the other hand, introduced standard operating procedures which prohibit the type of activity surrounding the challenged conduct.

b.

Haines contends that the district court erred in granting summary judgment in favor of Fisher, Reeve, and Murphy on his § 1983 claims.

Haines states that while the "'acts of officers in the gambit of their personal pursuits are not under color of state law and do not impose liability.' . . . [i]t is also true that 'acts of officers who undertake to perform their official duties are included whether they hew to the line of authority or overstep it.' Screws v. United States, 325 U.S. 91, 111 (1945)." (Appellant's Brief at 28). The question then, according to Haines, is whether the retaliation of the officers in response to his earlier call was a "personal pursuit" or an "overstep" in the exercise of legitimate authority.

Haines reasons that the individual defendants overstepped their legitimate authority when each was on duty and being paid by Torrington at the time the plan was developed and effectuated. He states that they were able to stage the robbery only by the use of

Torrington's gun, coat and mask.  Haines argues that this retaliation, at the very least, raised genuine issues of material fact as to whether the officers were acting under color of state law.

Fisher and Reeve respond that the district court properly granted summary judgment in their favor on Haines' § 1983 claims because the evidence showed that they did not act under color of state law inasmuch as their actions were unrelated to the performance of their duties as police officers.  Fisher and Reeve cite Barna v. City of Perth Amboy, 42 F.3d 809 (3rd Cir. 1994), and Gibson v. City of Chicago, 910 F.2d 1510 (7th Cir. 1990), for the proposition that the private acts of police officers, even while in uniform, are not under color of law unless the acts are related to the performance of police duties.

Section 1983 was enacted "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  Wyatt v. Cole, 504 U.S. 158, 161 (1992).  "The obvious purpose of . . . § 1983 was to provide a remedy to parties deprived of constitutional rights by a state official's abuse of his position while acting under color of state law."  D.T. by M.T. v. Independent Sch. Dist. No. 16, 894 F.2d 1176, 1187 (10th Cir.), cert. denied, 498 U.S. 879 (1990).  To state a claim under § 1983, a plaintiff must allege that the claimed deprivation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  Id. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).  Finally, "[s]ection 1983 imposes liability  for

violations of rights protected by the Constitution, not for viola-
tions of duties of care arising out of tort law." <u>Baker v. McCo-
llan</u>, 443 U.S. 142, 146 (1979).

Applying these standards, we hold that the district court did
not err in granting summary judgment in favor of the individual
defendants on Haines' § 1983 claims.  This is not a case in which
the defendants "exercised power 'possessed by virtue of state law
and made possible only because the wrongdoer [was] clothed with the
authority of state law.'"  <u>Atkins</u>, 487 U.S. at 49 (quoting <u>Classic</u>,
313 U.S. at 326).  We agree with the district court that "[i]n this
case, the defendants, and in particular Defendant Reeve, were not
using their badges of authority, i.e., their positions as a
policemen for the Town of Torrington to accomplish the 7-Eleven
prank in which plaintiff [Haines] was the intended victim."  (Ap-
pendix, Vol. III at 737).

Haines acknowledges that the "acts of officers in the gambit
of their personal pursuits are not under color of state law and do
not impose liability."  Accordingly, if, as Haines alleged in his
complaint, "the purpose behind one or more of the Defendants'
conduct was to scare [him] so that he would be intimidated by them
and lured into their lurid alternative life style," (Appendix, Vol.
I at 006), the acts of the individual defendants would clearly fall
within "the gambit of their personal pursuits" and could not be
considered acts under color of state law.

c.

Haines maintains that the district court improperly granted
summary judgment in favor of Torrington on his state law claims.

Haines reasons that it "appears" that the district court
granted Torrington summary judgment  on "the basis . . . that the

officers were not acting within the course of their employment, in discussing, planning and participating in the incident." (Appellant's Brief at 35). Haines states that since "[a]ll of the officers, except Reeve, were being paid by the Town at the normal place of work under the normal practice, using the town equipment," and "[t]hey were reacting to a call they received in the normal scope of their employment as peace officers," genuine issues of material fact made summary judgment inappropriate. Id. at 37.

Although the determination of whether one is acting within the scope of employment is generally a question of fact, "the determination of the definition of [scope of employment] or the standard under which it is ascertained is a question of law for the court." Miller v. Reiman-Wuerth Co., 598 P.2d 20, 23 (Wyo. 1979). Under Wyo. Stat. § 1-39-112, "[a] governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties." Wyo. Stat. § 1-39-103 (a)(v) defines "scope of duties" as "performing any duties which a governmental entity requests, requires or authorizes a public employee to perform regardless of the time and place of performance."

The acts of the individual defendants in planning and effectuating the staged robbery were not duties which Torrington had requested, required, or authorized the performance of. Hence the acts did not fall within the individual defendants' scope of duties. Under these circumstances, we hold that the district court did not err in granting summary judgment in favor of Torrington on Haines' state law claims.

## II.

Haines maintains that the district court erred in refusing to

instruct the jury on his negligence claim.

The grant or denial of an instruction is a matter of procedure controlled by federal law. Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1517 (10th Cir. 1995). We review the district court's refusal to submit a proffered instruction for abuse of discretion. Wilson v. Union Pac. R.R., 56 F.3d 1226, 1230 (10th Cir. 1995).

In his complaint, Haines alleged, in addition to his claims for violation of his rights under § 1983, assault, extreme and outrageous conduct, and willful and wanton misconduct, that "[v]arious employees of the Town of Torrington, including the Defendants and their supervisors, were aware of the actions of the Defendant and had a duty to intervene so as not to see the Plaintiff damaged. Defendants were negligent in failing to intervene which proximately caused Plaintiff damage." (Appendix, Vol. I at 005).

Prior to trial, the court granted Torrington summary judgment on all of Haines' claims, and partial summary judgment in favor of the individual defendants on Haines' § 1983 claims. As structured, the case proceeded to trial on Haines' state law claims for negligence, assault, extreme and outrageous conduct, and willful and wanton misconduct against Fisher and Reeve.

At the close of the evidence, but prior to submitting the case to the jury, the court ruled that it would not submit Haines' negligence claims. (Appendix, Vol. X at 4463). The court instructed the jury on Haines' remaining state law claims.

The jury returned a special verdict in which it found that: Haines had not been assaulted, the defendants did not commit extreme and outrageous conduct on him, the actions of the defendants did not amount to willful and wanton misconduct, and

Haines had sustained $0.00 in damages.

On appeal, Haines contends, without challenging the court's instructions on assault, extreme and outrageous conduct, and willful and wanton misconduct, that the court erred in not additionally instructing on his claim that the defendants were negligent, i.e., in that the defendants "were aware of the actions of the Defendant[s] and had a duty to intervene . . . ." (Appendix, Vol. I at 005). Essentially, Haines is representing that Fisher and Reeve, in addition to being liable for damages for intentionally assaulting him, engaging in extreme and outrageous conduct, and willful and wanton misconduct, were also liable for damages for negligently failing to intervene and prevent those actions. Stated alternatively, Haines is arguing that Fisher and Reeve were negligent for not changing their minds once they embarked on the staged robbery.

It is uncontested that Fisher and Reeve participated in the staged robbery; they did exactly what they intended to do. The jury obviously believed that they did so as part of a prank or practical joke inasmuch as it found in their favor on Haines' claims of assault, extreme and outrageous conduct, and willful and wanton misconduct. That being the case, we hold that the district court did not abuse its discretion by refusing to instruct on negligence, when, in Wyoming, "[i]ntent is not a factor of negligence since negligence precludes intended conduct." Kobos by and through Kobos v. Everts, 768 P.2d 534, 538 (Wyo. 1989).

III.

Haines reasons that the district court erred in submitting the issue of assault for jury determination. Haines acknowledges that the district court properly instructed that a plaintiff must prove

the following to establish an assault:

1. The defendants acted with the intent of making a contact with the person of the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact; and

2. The plaintiff was placed in apprehension of an imminent contact with his person by the conduct of the defendants; and

3. Such contact appeared to be harmful or offensive.

(Appendix, Vol. X at 812).

Haines argues that because he established the elements of assault by showing that the defendants had agreed to a plan which was intended to scare him and that he had been scared and believed he had been shot when the gun discharged, the district court erred in denying his motions for a directed verdict and for judgment notwithstanding the verdict on his assault claim. Fisher and Reeve respond that there was conflicting evidence as to whether Haines was placed in immediate apprehension of bodily injury and whether the gun was discharged before or after Haines recognized his long time friend, Reeve.

We consider motions for directed verdict and judgment notwithstanding the verdict under the same standard. FDIC v. United Pac. Ins. Co., 20 F.3d 1070, 1079 (10th Cir. 1994). We review the district court's denial of these motions de novo. Sheets v. Salt Lake County, 45 F.3d 1383, 1387 (10th Cir.), cert. denied, ___ U.S. ___ (1995). Under this standard, we may find error in the denial of such a motion only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion. United Pac. Ins. Co., 20 F.3d at 1079.

We hold that the district court did not err in denying Haines' motions for a directed verdict and for judgment notwithstanding the verdict. Fisher and Reeve presented evidence, obviously believed

by the jury, that Haines was not placed in immediate apprehension of bodily injury and that he recognized that one of the pranksters was his friend Reeve.

IV.

Haines maintains that the district court erred in failing to award him damages against Murphy when Murphy defaulted without filing an answer to his complaint and did not dispute the evidence regarding liability.

Murphy did not file an appearance or respond. Prior to trial, the district court granted partial judgment in favor of all the individual defendants, including Murphy, on Haines' § 1983 claims. At the conclusion of the trial, the jury found, inter alia, that Haines had suffered $0.00 in damages.

Thereafter, Haines moved for reconsideration of the district court's partial judgment in favor of Murphy on Haines' § 1983 claims and for default judgment against Murphy. Following a hearing, the district court entered an order that "judgment be entered forthwith against defendant Kraig Daniel Murphy, but that plaintiff recover nothing of him." (Appendix, Vol. III at 896).

On appeal, Haines contends that the district court erred in determining "that the entry of zero damages sustained by [him] on the verdict . . . necessitated the finding of zero damages caused by Murphy," and that "[i]t is not logically required to conclude that Murphy's violation of the plaintiff's rights which has been established by the default, caused [him] no damage." (Appellants Brief at 46 and 50). We agree with the district court that this issue is controlled by Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145 (10th Cir. 1985).

In Hunt, H.B. and Lola Hunt (the Hunts) filed an action

against defendants Inter-Globe Energy, John Corrente, and Forest N. Simon, alleging that the defendants had engaged in common law fraud and various breaches of state and federal securities laws in selling fractional working interests in oil and gas leases.

When Corrente failed to plead or otherwise defend, the court entered default judgment against him in favor of the Hunts for their investment of $30,000, interest, and attorney fees. Further, the court awarded expenses, and punitive damages of $300,000. The Hunts proceeded against Simon. After trial, a jury awarded the Hunts $30,000 in actual damages against Simon but did not award any punitive damages.

Thereafter, Corrente filed a motion to vacate the default judgment entered against him. Corrente argued, inter alia, that the default judgment should not have been entered against him until the matter had been adjudicated with regard to all defendants. The district court denied Corrente's motion.

On appeal, we reversed and remanded with instructions that the district court "reduce the default judgment to an amount consistent with the application of liability and damages against defendant Simon." Hunt, 770 F.2d at 148. In so doing, we relied on Frow v. De La Vega, 82 U.S. 552 (1872):

> In Frow, the plaintiff brought an action against Frow and thirteen other defendants . . . . Frow failed to answer timely . . . . The district court subsequently . . . award[ed] a permanent injunction against Frow. After the entry of the final decree against Frow, the court proceeded to try the case and decided the merits of the case adversely to plaintiff and dismissed the complaint.
>
> On appeal, the Supreme Court reversed the default judgment against Frow, concluding that when multiple defendants are alleged to be jointly liable and fewer than all defendants default, the district court may not render a liability determination as to the defaulting parties unless and until the remaining defendants are found liable on the merits. . . . This result avoids inconsistent liability determinations among joint tort-

<u>feasors.</u>

<u>Hunt</u>, 770 F.2d at 147 (emphasis added).

We hold that the district court did not err when it entered judgment against Murphy, and simultaneously ordered that Haines recover nothing from him.

**AFFIRMED.**

**No. 95-8016:** *Haines v. Fisher et al.*

**Nathaniel R. Jones, Senior Circuit Judge,**

 **Concurring in part and Dissenting in part.**

I fully concur in Parts I(c), III and IV of the opinion and in the result reached in Parts I(a) and II.[1] I respectfully dissent, however, from Part I(b).

In Part I(b) the majority holds that the district court did not err in granting summary judgment in favor of Officers Fisher and Reeve and Dispatcher Murphy on Haines' § 1983 claims, finding that the defendants' actions were not under color of state law. After applying the relevant law to the facts in this case, I have come to a different conclusion. The defendants' enterprise was performed under color of state law; hence, summary judgment to the defendants on that issue was inappropriate.

While it is a standard principle that the acts of officers in the gambit of their personal pursuits are not under color of

---

[1] In Part I(a) the majority finds that the Town of Torrington did not have a policy, custom, or practice adopting or approving the activity surrounding the staged robbery. I agree. The majority, however, applied the case of Monell v. Department of Social Services, 436 U.S. 658 (1978), to reach its conclusion. Monell dealt only with the concept of municipal liability for broad official policies or customs and was further refined by the case of Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292 (1986). In Pembaur, the Court held that a single incident may be evidence of a policy when the conduct represents a decision of authorized policy makers. In this case, Haines alleged that Sgt. Fisher was an authorized policy maker and his decision to conduct the prank established a policy. As the facts do not support such a conclusion, I find that under Pembaur, summary judgment was proper for the Town of Torrington.

In Part II the majority finds that the district court did not abuse its discretion by refusing to instruct on negligence. Because I view the district court's approach to the issue of negligence as a *sua sponte* judgment as a matter of law, I believe the propriety of instructing the jury on plaintiff's negligence claim should be reviewed *de novo*. Nonetheless, I have concluded, for the same reasons discussed by the majority, that the issue was properly withheld and there was no error.

state law and thus are not grounds for liability, it is equally incontrovertible that "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of authority or overstep it." Screws v. United States, 325 U.S. 91, 111 (1945). Moreover, a defendant is said to be acting under color of state law when he exercises power "possessed by virtue of state law and [his actions are] made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).

This case does not involve merely a situation wherein Officer Reeve entered the 7-11 alone, disguised as a robber. If that were the only fact before the court, it is possible that such an action would not be considered taken under color of law. The defendants in this case, however, conspired to deprive Haines of his constitutional rights and effectuated their strategy by abusing the power they held under state law. Indeed, the defendants' prank was a complicitous scheme which could only be accomplished through the use of their public positions, while performing their official duties.

In addition to the fact that the dispatcher and officers were on-duty and in uniform[2] (excepting Reeve, who wore other clothes belonging to the police department):  (1) the defendants concocted the prank in response to Haines' earlier call to report suspicious vehicles;[3] (2) all material used to effectuate the prank was Torrington Police Department property, including the M-16 rifle, the blanks, the trench coat, the mask, the police cars, the radio, and the dispatch telephone system; (3) the plan was created and agreed to by all officers while in the police station working on training exercises; (4) the dispatcher, Murphy, called in his official capacity to warn Haines of potential danger; (5) Sgt. Fisher, using the police radio, radioed Murphy to direct him to make the call, and Murphy called, using an unrecorded police line; (6) in order to control the situation and protect the public (a typical responsibility of officers acting in their official capacity), two uniformed officers and marked police cars were stationed outside the 7-11; and (7) Sgt. Fisher, the highest ranking officer on-duty, masterminded the scheme and "gave orders" to subordinates on how to carry it out.

---

[2] I do not imply that the defendants were acting under color of law solely because they were on-duty and in uniform.  See Lusby v. T.G. & Y Stores, Inc., 749 F.2d 1429 (10th Cir. 1984) (concluding that an officers on or off-duty status is not dispositive of whether he is acting under color of law.); accord Layne v. Sampley, 627 F.2d 12 (6th Cir. 1980).  A defendant's duty status and attire is relevant in determining whether actions were taken under color of law only when considered alongside the defendant's conduct.

[3] The majority suggests that the prank was conceived to intimidate and lure Haines into an alternative lifestyle.  I fail to see how such a prank could accomplish that end, but, more importantly, Haines has alleged also that the prank was initiated as retaliation, in response to his earlier call.  See Maj Op [2, fn1].  As we must draw all reasonable inferences in favor of a non-moving party when reviewing the grant of summary judgment, these two "reasons" for the prank should, at a minimum, be considered consistent co-existing motivations, or in the alternative, the more plausible should be inferred.  Notwithstanding, other factors exist which also lead me to conclude that the defendants' actions were under color of law.

It is true that almost anybody can stage a robbery; but, only police officers can use police radios, order dispatchers to make calls, and have police cruisers posted outside while uniformed men serve as lookouts to protect the malefactors from discovery or the public from harm.  Under these circumstances, the defendants certainly employed power possessed by virtue of state law and their actions were made possible only because they were clothed with the authority of the state.  See Atkins, 487 U.S. at 49.  Thus, regardless of the impropriety, perversion and temerity of the defendants' scheme, as a matter of law their actions were taken under color of law.