1998 ME 241

Ronald LANDRY

v.

Samantha LEONARD.

NORTH EAST INSURANCE CO.

v.

Samantha LEONARD et al.

Supreme Judicial Court of Maine.

Argued Sept. 10, 1998.

Decided Nov. 9, 1998.

Kenneth W. Hovermale, Jr. (orally), Portland, for appellant.

Marshall J. Tinkle (orally),David M. Hirshon, Tompkins, Clough, Hirshon, & Langer, P.A., Portland, for Samantha Leonard.

Noah D. Wuesthoff (orally),Christopher C. Dinan, Monaghan, Leahy, Hochadel & Libby, L.L.P., Portland, for North East Ins.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, Justice.

[¶ 1] Ronald Landry appeals from a summary judgment entered in the Superior Court (Cumberland County, *Brennan, J.*) in

favor of Samantha Leonard. Landry suffered a serious injury when he was the victim of an armed robbery, and he sued Leonard, one of the robbers, for negligence. Leonard successfully argued in the Superior Court that she owed no duty to Landry and that the intentional act of committing an armed robbery excluded a finding of negligence.

[¶ 2] A second action, involving these same facts, is also on appeal. Landry appeals from a summary judgment entered in the Superior Court (Cumberland County, *Brennan, J.*) in favor of North East Insurance Company which declared that North East has no duty to defend Leonard. North East issued a homeowner's policy to Leonard's mother, and Leonard is an insured under the policy. North East prevailed in its argument that Landry's injury is excluded from coverage because an injury during the commission of an armed robbery is so highly likely to occur that it is "expected or intended" as a matter of law within the meaning of the exclusion in the policy. We affirm both judgments.

[¶ 3] Landry was working as a cab driver on February 18, 1995, when he was robbed and seriously injured. The robbery was planned and carried out by Timothy Wing, Leonard, and an acquaintance of theirs. Leonard, who was fifteen years old at the time, was a willing participant in the robbery. Leonard knew that the plan involved threatening the cab driver with a knife. Acting according to their plan, the trio called a cab, which happened to be Landry's, and got into it. When Landry stopped the cab to let them out, Wing held a knife to Landry's throat. Leonard told Landry to give them his money. As soon as she got the money, Leonard exited the cab and ran. A few

hours later Wing met Leonard and told her he had slashed the driver's throat. Leonard asserts that she did not expect or intend that Landry would be injured. Leonard was adjudicated to have committed the juvenile offense of Class A robbery.[1] The only claim that Landry brought against Leonard is negligence.[2]

■ [¶ 4] We review the Superior Court's entry of summary judgment "for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered." *Denman v. Peoples Heritage Bank, Inc.*, 1998 ME 12, ¶ 3, 704 A.2d 411, 413. A summary judgment will be upheld "if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* "The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question before the court is solely one of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1144 (Me.1995).

## I.

[¶ 5] We first consider the declaratory judgment action by North East. Leonard is an insured under the insurance policy issued by North East. The policy provides that North East will defend an insured when there is a bodily injury caused by an "occurrence." An "occurrence" is an accident which results in bodily injury. Excluded from coverage is liability for bodily injury "which is expected or intended by the 'insured.'"

1. Leonard entered an admission to the juvenile complaint which charged her with violating 17–A M.R.S.A. § 651(1)(B) and (E):
  1. A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions:
  . . . .
  B. He threatens to use force against any person present with the intent
  (1) to prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking; or
  (2) to compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property;
  . . . .
  E. He or an accomplice to his knowledge is armed with a dangerous weapon in the course of a robbery as defined in paragraphs A through D.
  17–A M.R.S.A. § 651 (1983).

2. Although Landry named all three participants in his complaint, service was made only upon Leonard.

[¶ 6] In several cases in which the insured was convicted of a crime we examined the same exclusionary language to determine whether the insurance company had a duty to defend an insured for either negligence or an intentional tort arising from the same act that resulted in the criminal conviction. In *Mutual Fire Ins. Co. v. Hancock*, 634 A.2d 1312 (Me.1993), the trial court found that Hancock raped the plaintiff and repeatedly struck her about the head. Because Hancock was intoxicated, the trial court concluded that his actions were not intentional and the policy exclusion did not apply. We held that the systematic brutal beating was intentional and the injuries were expected "[a]s a matter of law." *Id.* at 1313. The policy exclusion applied, and the insurance company had no duty to indemnify Hancock.

[¶ 7] In *State Mutual Ins. Co. v. Bragg*, 589 A.2d 35 (Me.1991), Bragg was the personal representative of the estate of a murder victim. Forrest pled guilty to the murder, and Bragg sued him for negligence. We held that murder is a crime in which the intention or expectation of injury is inherent. Because Forrest pled guilty to the murder, he was collaterally estopped from relitigating the issue of intent. *Id.* at 38. The exclusionary language in the policy therefore applied, and the insurance company had no duty to defend.

[¶ 8] In *Perreault v. Maine Bonding & Cas. Co.*, 568 A.2d 1100 (Me.1990), we held that child sexual abuse was a crime in which the intent to commit the act carries with it the intent to cause injury. The insurance contract exclusion was applicable. Although Perreault was convicted of unlawful sexual contact, he asserted in the civil case that he did not intend or expect injury to the child. We concluded:

> On any objective basis, anyone intentionally committing the offense of unlawful sexual contact against a child is bound to expect that psychological and emotional harm will result. Harm from the sexual abuse of a child is so highly likely to occur that the intent to commit the act inherently carries with it the intent to cause the resulting injury.

*Id.* at 1101.

[¶ 9] Leonard admitted the commission of a Class A robbery. The commission of a robbery does not necessarily mean that the robber intends the victim to be physically harmed or that the robber subjectively foresees that injury is almost certain to be a result. However, when the robber is a willing participant and knows that a dangerous weapon will be used to threaten the victim with the intent to compel the victim to give up his property or to prevent the victim from resisting the theft, it is so highly likely that bodily injury will result that we will deem willing participation in the crime to be the intent or expectation to cause the bodily injury.

[¶ 10] Leonard was a willing participant in the robbery of Landry. Leonard knew, because she was one of the architects of the robbery, that Wing would use the knife to threaten the cab driver to give up his money. Bodily injury to Landry was so likely to occur during the robbery of him in which a dangerous weapon was used that the intention and expectation of injury was inherent as a matter of law in the commission of the crime.[3] We conclude that the exclusionary language of the policy is applicable and North East does not have a duty to defend Leonard.

[¶ 11] Public policy is also a consideration in reaching this conclusion. The general rule is that it is against public policy for insurance to indemnify an insured against his own criminal acts. *See Perreault*, 568 A.2d at 1102. People who purchase homeowners' policies do not intend that victims' injuries caused by convicted robbers during an armed

---

**3.** The Wisconsin Supreme Court reached the same result in a case involving the armed robbery of a liquor store in which an employee was killed. *Raby v. Moe*, 153 Wis.2d 101, 450 N.W.2d 452 (Wis.1990). The insured drove the "getaway" car. The court concluded that "some type of bodily injury is so substantially certain to occur during the commission of an armed robbery that the law will infer an intent to injure on behalf of the insured actor without regard to his claimed intent." *Id.* at 457. *See also Ohio Cas. Ins. Co. v. Henderson*, 189 Ariz. 184, 939 P.2d 1337, 1344 (Ariz.1997) (en banc) (holding insurance exclusion applicable; injury substantially certain to result from armed robbery so that intent may be inferred as a matter of law).

robbery be covered by the robber's insurance nor do they expect to pay premiums to share in the coverage of such risks. Our holding today is consistent with public policy.

## II.

[¶ 12] We next turn to the negligence action brought by Landry against Leonard. In his complaint Landry claims that Leonard "negligently participated in a venture" that resulted in injuries to Landry. There are a variety of intentional torts that Landry could have pled against the participants in the robbery such as battery, false imprisonment, conversion and others. Presumably in his attempt to find the "deep pockets," Landry pled only negligence knowing that Leonard's insurance policy would exclude intentional conduct.

[¶ 13] Leonard contends that she owed no duty of care to Landry and that any negligence on her part did not cause Landry's injuries. We need not reach the questions of duty or causation. We conclude that because Leonard was engaged in the intentional act of robbing Landry with the use of a dangerous weapon, a finding of negligence for that act is excluded.

[¶ 14] Although we have not held directly that an intentional act precludes a finding of negligence, we have stated in dicta that such is the case. In *Wing v. Morse*, 300 A.2d 491 (Me.1973), in which the court analyzed the comparative negligence statute, we stated:

In judging conduct of an actor it should be considered complete carefulness is at one end, a deliberate intention to bring about the result is at the other. Negligence ranges from the least blameworthy type, namely, inadvertence and negligent errors of judgment up to a state where knowledge or more complete knowledge supervenes and the negligence of obstina-

cy, self-righteousness or recklessness is reached.

*Id.* at 500. In other words, negligence is neither "complete carefulness" nor "a deliberate intention to bring about the result." As the leading treatise states:

It is helpful to an understanding of the negligence concept to distinguish it from intent. In negligence, the actor does not desire to bring about the consequences which follow, nor does he know that they are substantially certain to occur, or believe that they will.... As the probability of injury to another, apparent from the facts within the acting party's knowledge, becomes greater, his conduct takes on more of the attributes of intent, until it approaches and finally becomes indistinguishable from that substantial certainty of harm that underlies intent.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 31, at 169–70 (5th ed.1984). When there is substantial certainty that injury will result from an act or when there is a deliberate act to cause the injury, that act is not a negligent act. It is an intentional act. *See Haines v. Fisher*, 82 F.3d 1503, 1510 (10th Cir.1996) (applying Wyoming law) (upholding refusal to instruct jury on negligence because it was undisputed that defendants acted intentionally in staging fake robbery); *Waters v. Blackshear*, 412 Mass. 589, 591 N.E.2d 184, 185 (Mass.1992) (holding that intentional conduct of placing firecracker in plaintiff's shoe cannot be negligent conduct).

[¶ 15] A finding of intentional conduct does not necessarily and in all situations preclude a finding of negligence. However, when there is deliberate criminal conduct in which there is a substantial certainty of injury, that conduct excludes a finding of negligence for injuries to the victim of the criminal conduct.[4] Although the duty to defend cases discussed in the preceding part involve interpretation of contract language and are

---

4. This is in contrast to the criminal law in which, by statute, lower mental states include higher mental states: "When the law provides that negligence is sufficient to establish an element of a crime, that element is also established if, with respect thereto, a person acted intentionally, knowingly or recklessly." 17-A M.R.S.A. § 34(3) (1983). While in the criminal law there are substantial policy reasons for finding an intentional actor guilty of a crime in which acting negligently would suffice, there are equally substantial policy reasons for continuing to distinguish, in civil law, between negligence and intentional torts.

not directly on point, the reasoning of those cases is as persuasive in the context of determining whether an act can be negligent as it is in interpreting an insurance policy. In *Perreault* this Court held that certain criminal acts are so inherently likely to result in injury, that the intent to cause the injury is found "as a matter of law." We apply and extend the holding of *Perreault* to this situation. Committing an armed robbery is so highly likely to cause injury to the victim that the law will infer that any injury occurring to the victim and caused by a participant is the result of an intentional act and not the result of a negligent act. Therefore, summary judgment for Leonard is appropriate because the only claim against her is one of negligence.

The entry is:

Judgments affirmed.