MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 125
Docket:        Yor-17-416
Argued:        April 11, 2018
Decided:       August 21, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:      SAUFLEY, C.J., and GORMAN, HJELM, and HUMPHREY, JJ.
Concurrence:   MEAD, ALEXANDER, and JABAR, JJ.

VERMONT MUTUAL INSURANCE COMPANY

v.

JONATHAN BEN-AMI et al.

HJELM, J.

[¶1]  In October of 2011, Joshua Francoeur attacked a fellow high-school student, Jonathan Ben-Ami, by punching him a number of times in the face, causing Ben-Ami serious injuries, including a broken jaw.  This appeal concerns the availability of homeowner's liability insurance coverage for damages resulting from those injuries.  The insurer, Vermont Mutual Insurance Company, appeals from a declaratory judgment entered by the Superior Court (York County, *O'Neil, J.*), determining, in relevant part, that Francoeur's tortious conduct did not fall within a policy exclusion from coverage for bodily injury that is "expected or intended" and that Ben-Ami is entitled to indemnification

2

pursuant to the policy.[1]  Given the nature and circumstances of the assault as found by the court, the evidence compelled the court to find that Francoeur "expected" that he would cause bodily injury to Ben-Ami, thereby triggering the exclusion and relieving Vermont Mutual from any obligation to pay for Ben-Ami's damages.  We therefore vacate the judgment and remand for entry of judgment for Vermont Mutual.

## I.  BACKGROUND

[¶2]  The court found the following facts, which—except where indicated otherwise—are supported by the record.  *See State Farm Mut. Auto. Ins. Co. v. Estate of Carey*, 2012 ME 121, ¶ 2, 68 A.3d 1242.  Because Vermont Mutual moved for the court to issue further findings pursuant to M.R. Civ. P. 52(b), we consider only the findings and conclusions explicitly rendered by the court and do not attribute any inferred findings to the court.  *See Ehret v. Ehret*, 2016 ME 43, ¶ 12, 135 A.3d 101.

[¶3]  Francoeur, the son of the named insured under the Vermont Mutual policy, and Ben-Ami attended the same high-school at the time of the incident

---

[1] The court also determined that several other requirements for coverage were present, including that Francoeur was a "resident" at the home of his father, who is the named insured, and that the assault was an "accident" and therefore an "occurrence" that is covered under the insurance policy. Because we hold that the intentional or expected injury exclusion by itself bars coverage, we do not reach Vermont Mutual's alternative contention that the court erred in those determinations.

giving rise to this action. While attending a football game, days before the physical attack, Francoeur and Ben-Ami became engaged in a verbal dispute. As a result of that encounter, Francoeur, encouraged by friends, planned an attack on Ben-Ami. On October 24, 2011, Francoeur left a class he was attending and walked to Ben-Ami's classroom, planning to hit Ben-Ami. When Francoeur arrived at Ben-Ami's classroom, he had second thoughts about following through with his plan but was encouraged by a friend to proceed with it. Francoeur found that the door to Ben-Ami's classroom was locked, so Francoeur had to get the attention of the teacher, who unlocked the door and let Francoeur inside. At that time, Ben-Ami was wearing headphones and was "likely unaware" of the imminent attack. Francoeur approached Ben-Ami from behind and struck Ben-Ami in the face multiple times with a closed fist. As a result, Ben-Ami suffered serious injuries, including a broken jaw.

[¶4] Ben-Ami subsequently commenced a personal injury action against Francoeur in the Superior Court (York County). Francoeur's father owned a homeowner's liability insurance policy for the period that included the date of the assault. Pursuant to the policy, Vermont Mutual provided Francoeur with a defense in the direct action. In January of 2014, however, Vermont Mutual filed a complaint against Francoeur and Ben-Ami in the Superior Court, seeking a

declaratory judgment that Francoeur was not an "insured" within the meaning of the policy and that Ben-Ami's damages were not covered by the policy. Later that year, in October of 2014, while the declaratory judgment action was pending, the court entered a consent judgment on Ben-Ami's claim against Francoeur, awarding Ben-Ami $150,000, but with satisfaction of that judgment contingent on the outcome of the declaratory judgment action brought by Vermont Mutual. The judgment was subject to the further stipulation that Ben-Ami would not execute the judgment against Francoeur personally but instead would file an action to reach and apply the liability insurance proceeds from the Vermont Mutual policy.

[¶5] Shortly after the court issued the consent judgment in Ben-Ami's personal injury case, Ben-Ami filed a reach and apply action against Vermont Mutual in the Superior Court. *See* 24-A M.R.S. § 2904 (2017). On Vermont Mutual's motion, the court (*Fritzsche, J.*) consolidated into a single action Vermont Mutual's complaint for declaratory judgment and Ben-Ami's reach and apply action.

[¶6] After denying a motion for summary judgment filed by Vermont Mutual, in February of 2017, the court (*O'Neil, J.*) held a bench trial on the declaratory judgment portion of the consolidated action. Francoeur, his father,

and two employees of the high-school testified. Several months later, the court issued a judgment declaring that Ben-Ami's damages, which had been reduced to the consent judgment, were covered by the insurance policy and setting out the factual findings described above. Regarding the applicability of the policy exclusion, the court found that, at the time of the altercation, Francoeur had the

> subjective intent to strike Mr. Ben-Ami on multiple occasions in the face. The [c]ourt however cannot conclude that he subjectively intended to inflict the level of damage that ultimately was inflicted upon Mr. Ben-Ami in the form of his broken jaw. Mr. Francoeur's testimony that he did not consider the consequences of his action, or consider the likelihood that his punching of Mr. Ben-Ami would produce such a serious injury is credible.

[¶7] Vermont Mutual subsequently filed a motion to amend and for further factual findings. *See* M.R. Civ. P. 52(b), 59(e). The court declined to amend the judgment except to correct a reference to a date, but the court issued several additional factual findings, including the following:

> Francoeur intended to strike Mr. Ben-Ami multiple times in the face with a closed fist. The court however also concludes that Mr. Francoeur was not actively or consciously considering the extent of damage he could and ultimately did cause. The court concludes that at the actual time of the assault his thinking was likely reflective of the words of [his friend] about how the assault would gain him social respect and was not considering the extent of actual damage his actions would cause.
>
> . . . .

6

[Francoeur] intended to punch Mr. Ben-Ami. What the court cannot conclude is that at the time of the assault, he subjectively considered or intended the extent of the damage he could and did cause.

[¶8] In September of 2017, Ben-Ami and Vermont Mutual entered into an agreement whereby Vermont Mutual would satisfy the $150,000 judgment entered for Ben-Ami, subject to Vermont Mutual's right to appeal. The court accepted the agreement and entered it as a final judgment.[2] Vermont Mutual then filed a timely appeal to us. *See* 14 M.R.S. §§ 1851, 5959 (2017); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶9] The dispositive issue on appeal is whether the damages sustained by Ben-Ami resulted from "bodily injury . . . [w]hich is expected or intended by" Francoeur and therefore fall within the exclusion from coverage provided by the homeowner's insurance policy that Francoeur's father had purchased from Vermont Mutual. (Quotation marks omitted.)

[¶10] "The interpretation of an insurance contract exclusion and its applicability is a matter of law reviewed de novo." *Pease v. State Farm Mut. Auto. Ins. Co.*, 2007 ME 134, ¶ 7, 931 A.2d 1072. "[T]he rule requiring a strict

---

[2] Because the reach-and-apply component of the consolidated action remained pending after the court issued the declaratory judgment in April of 2017, there was no final judgment until the court issued the stipulated judgment in September of 2017.

construction against the insurer and a liberal construction in favor of the insured is not applicable unless there is ambiguity in terms of the policy." *Foremost Ins. Co. v. Levesque*, 2005 ME 34, ¶ 24, 868 A.2d 244 (quotation marks omitted).

[¶11] A trial court's factual findings are reviewed for clear error. *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶ 7, 905 A.2d 819. Vermont Mutual bore the burden before the trial court to prove the applicability of the exclusion necessary to defeat coverage. *See Mut. Fire Ins. Co. v. Hancock*, 634 A.2d 1312, 1313 (Me. 1993). Therefore, because the trial court determined that Vermont Mutual failed to meet its burden of proof, Vermont Mutual must establish on appeal that the evidence compelled the court to make contrary factual findings necessary for a judgment in its favor. *See St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 16, 55 A.3d 443. And as noted above, *see supra* ¶ 2, because Vermont Mutual moved for the court to issue further findings, our review is confined to the court's explicit findings. *See* M.R. Civ. P. 52(b); *Ehret*, 2016 ME 43, ¶ 12, 135 A.3d 101.

[¶12] Here, the general grant of personal liability coverage created by the policy encompasses damages for "bodily injury" caused by an applicable

8

"occurrence" for which the insured is liable.[3] (Quotation marks omitted.) An "[o]ccurrence means an accident . . . which results, during the policy period, in . . . [b]odily injury." (Quotation marks omitted.) Although "accident" is not defined in the policy, coverage for personal liability is nevertheless subject to the related exclusion for "bodily injury . . . [w]hich is expected or intended by the insured." (Quotation marks omitted.)

[¶13]   We have previously considered a materially identical policy exclusion for conduct that resulted in "bodily injury . . . which is either expected or intended from the standpoint of the [i]nsured." *Patrons-Oxford Mut. Ins. Co. v. Dodge*, 426 A.2d 888, 889 (Me. 1981) (quotation marks omitted).   We concluded that this policy language is ambiguous because it could reasonably be interpreted in different ways, including by leaving open the question of whether the infliction of bodily injury must be "expected or intended" based on an objective assessment or based on the tortfeasor's own subjective perceptions. *Id.* at 891.   Accordingly, applying the established principle that ambiguities in an insurance policy are to be construed strictly against the

---

[3] The policy defines an "insured" as the policyholder—here, Francoeur's father—and "residents of [the policyholder's] household who are" relatives of the policyholder or under twenty-one years of age and under the policyholder's care.  As is noted above, *see supra* n.1, Vermont Mutual asserts that, because of Francoeur's living arrangement and the nature of his relationship with his father, Francoeur was not an "insured" under the policy.  We do not reach this issue because we vacate the judgment on other grounds.

insurer and favorably to the insured, we interpreted that exclusion to mean "bodily injury that the insured in fact *subjectively wanted* ('intended') to be a result of his [or her] conduct or in fact *subjectively foresaw as practically certain* ('expected') to be a result of his [or her] conduct." *Id.* at 891-92. We construe and apply the exclusion language in Vermont Mutual's policy the same way.

[¶14] It is undisputed, and the court explicitly found, that Francoeur subjectively intended to hit Ben-Ami multiple times in the face with a closed fist. Although Vermont Mutual seeks to frame this case more broadly, *see infra* ¶ 18, the dispositive question here is whether the evidence compelled the court to find that Francoeur either "intended or expected" bodily injury to Ben-Ami, which would trigger the exclusion.

[¶15] The court made a number of supported findings regarding the background, nature, and magnitude of the attack: Francoeur and Ben-Ami had had a hostile verbal encounter several days earlier; Francoeur then developed a plan to attack Ben-Ami; in execution of that plan, Francoeur left his classroom and proceeded to another classroom where Ben-Ami was present; Francoeur induced the teacher to unlock the door in order to allow him into the classroom; Francoeur approached Ben-Ami from behind so that Ben-Ami, who had headphones on, was "likely unaware" of the imminent attack; Francoeur

punched Ben-Ami about the face with a closed fist "multiple times"; and, as the direct result of the assault, Ben-Ami sustained serious injuries, including a broken jaw.

[¶16]  Against the backdrop of these findings, however, the court also found that Francoeur did not consider "the consequences of his action" and did not "subjectively consider[] or intend[] the extent of the damage he could and did cause."  These specific findings were central to the court's conclusion that the damages for the assault fell outside of the coverage exclusion at issue here.

[¶17]  Despite Francoeur's testimony, the court's findings regarding his "expectation" of Ben-Ami's injury cannot stand alongside the court's account of the attack itself.  Given the premeditated nature of the assault, the ambush tactic that Francoeur used, and the location and magnitude of the resulting injuries, the evidence compelled the court to find, at the very least, that Francoeur must have subjectively foreseen as practically certain (i.e., expected) that his deliberately violent conduct would result in bodily injury to Ben-Ami.  *See Dodge*, 426 A.2d at 892.

[¶18]  We need not go as far as Vermont Mutual urges, which would be to hold categorically that an assault such as this falls within the exclusion irrespective of the assailant's subjective intent or expectation of harm.

Vermont Mutual asserts that this type of incident should be added to a list of narrowly drawn types of egregious conduct that we have held as a matter of law invoke an exclusion to coverage because the conduct is inherently injurious. *See Landry v. Leonard*, 1998 ME 241, ¶¶ 9-10, 720 A.2d 907 (armed robbery with the use of a dangerous weapon); *Hancock,* 634 A.2d at 1312-13 ("a systematic, hours-long brutal beating" and sexual assault of the tortfeasor's domestic partner); *State Mut. Ins. Co. v. Bragg*, 589 A.2d 35, 38 (Me. 1991) (murder and attempted murder); *Perreault v. Me. Bonding & Cas. Co.*, 568 A.2d 1100, 1101-02 (Me. 1990) (sexual abuse of a child). The conduct here—a broken jaw—is qualitatively different from those types of conduct we have categorically excluded from coverage. If Vermont Mutual wants the policy to be applied in that way, its recourse is to change the terms of coverage in the policies it sells.[4] For our purposes, because of the broad range of individualized

---

[4] The phraseology in the exclusion contained in Vermont Mutual's policy is unlike that found in other policies, such as the policy addressed in *Metropolitan Property & Casualty Insurance Co. v. Googins*, No. CV-13-102, 2014 Me. Super. LEXIS 228, at *6 (Oct. 31, 2014), where the insurer expressly excluded "intentional . . . acts even if such bodily injury is of a different kind or degree than reasonably expected or intended by you." *Id.* (alterations omitted) (quotation marks omitted). Furthermore, the exclusion language chosen by Vermont Mutual has been criticized elsewhere. *See, e.g.*, *Providence Mut. Fire Ins. Co. v. Scanlon*, 638 A.2d 1246, 1248 (N.H. 1994) (addressing an identical expected or intended injury insurance exclusion, the court stated that "we believe that the insurance companies doing business in this State are best served by being able to rely on our precedents, and to use them as guidance in drafting policy provisions. Thus, a carefully drawn exclusion could avoid the [subjective] test and substitute an objective standard"); *Espinet v. Horvath*, 597 A.2d 307, 309 (Vt. 1991) (noting that "[h]ad [the insurer] wished to exclude [certain conduct] from coverage . . . it could have included an appropriate provision in the contract").

circumstances that can characterize different assaults,[5] and given the nature of Francoeur's particular conduct as found by the court, it is sufficient to conclude based on the facts before us that Francoeur's specific conduct establishes that the damages he inflicted on Ben-Ami are excluded from coverage by the Vermont Mutual policy.

The entry is:

> Judgment vacated. Remanded for entry of judgment for Vermont Mutual.

---

MEAD, J., with whom ALEXANDER and JABAR, JJ., join, concurring

[¶19] I agree fully with the analysis and conclusion of the Court that the judgment of the Superior Court be vacated and the matter be remanded for entry of a judgment in favor of Vermont Mutual. I write separately because the facts and circumstances of this case underscore the need for a clear pronouncement of law regarding the insurability of intentional assaults.

[¶20] The Court succinctly states the rationale for its conclusion:

> Given the premeditated nature of the assault, the ambush tactic that Francoeur used, and the location and magnitude of the resulting injuries, the evidence compelled the court to find, at the very least, that Francoeur must have subjectively foreseen as

---

[5] For example, in the criminal context, the bodily injury in an "assault" need not be inflicted intentionally or knowingly but can be inflicted recklessly. *See* 17-A M.R.S. § 207(1)(A) (2017).

> practically certain . . . that his deliberately violent conduct would result in bodily injury to Ben-Ami.

Court's Opinion ¶ 17.

[¶21] The Court's reasoning is well rooted in common sense. When a person approaches an unsuspecting victim with a premeditated plan to repeatedly strike that person in the face with a closed fist, the intentionality of the act is established without question. The trial court found that Francoeur admitted as much in this case; he argued only that he did not intend to inflict the degree of injury that Ben-Ami suffered.

[¶22] As authority for his argument that his injuries are covered by Francoeur's Vermont Mutual policy, Ben-Ami points to our existing jurisprudence construing insurance coverage exclusions relating to injuries that are expected or intended. We have held that such injuries are "bodily injur[ies] that the insured in fact subjectively wanted ('intended') to be a result of his conduct or in fact subjectively foresaw as practically certain ('expected') to be a result of his conduct." *Patrons-Oxford Mut. Ins. Co. v. Dodge*, 426 A.2d 888, 892 (Me. 1981) (emphasis omitted).

14

[¶23]   The "expected or intended" exclusion is likewise founded in common sense.  Unexpected injuries can result from intentional acts.[6]  In the event of such unexpected injuries, insurance coverage may well be available (i.e., an "expected or intended" exclusion would not apply) depending upon actual policy language.

[¶24]  In applying an "expected or intended" exclusion to particular facts, a court must make factual findings regarding an insured's subjective intent or expectation to cause injury in determining whether an insurance policy's intentional acts exclusion is triggered.  In this case, the Superior Court found Francoeur's statement—that he did not consider the consequences of his actions or the possible extent of injuries he might cause—to be credible. Nonetheless, we have concluded that the evidence compelled a contrary finding, namely that Francoeur must have subjectively foreseen that his conduct would result in bodily injury to Ben-Ami.  Court's Opinion ¶ 17.

[¶25]  The Court cabins its result, unnecessarily in my view, to the unique facts of this case.  Court's Opinion ¶ 18.  I would go further and conclude that

_____

[6] For example, analyzing facts very similar to those presented here, the Arizona Court of Appeals recognized the possibility that if a person who strikes someone in the face "maintained that striking [the victim] was an accident, and that the blow itself was unintentional, summary judgment would be improper due to the dispute over a material fact."  *Clark v. Allstate Ins. Co.*, 529 P.2d 1195, 1196 (Ariz. Ct. App. 1975).

this factual scenario—the intentional striking of an unsuspecting person in the face with a closed fist—leads to a conclusion that as a matter of law the physical injuries resulting from the attack were intended and expected. The act of punching someone in the face with a closed fist is simply and undeniably inherently injurious. Consequently, in my view, the "expected or intended" insurance policy exclusion was triggered as a matter of law in this case by Francoeur's violent, inherently injurious assault on Ben-Ami, and provides a sufficient basis for the entry of a summary judgment in favor of Vermont Mutual. This approach is entirely consistent with the line of cases in which we have identified other specific acts as being inherently injurious.[7]

[¶26] The Massachusetts Supreme Judicial Court, in holding that the acts of rape and sexual assault are sufficiently inherently injurious so as to satisfy the "expected or intended" exclusion, noted the comparison to the inherently injurious act of striking another:

> Sexual assault and rape are, in this respect, indistinguishable from any other deliberate assault and battery. The act of striking another in the face is one which we recognize as an act so certain to cause a particular kind of harm that we can say a person who

---

[7] *See Landry v. Leonard*, 1998 ME 241, ¶ 9, 720 A.2d 907 (armed robbery with the use of a dangerous weapon); *Mut. Fire Ins. Co. v. Hancock,* 634 A.2d 1312, 1313 (Me. 1993) ("a systematic, hours-long brutal beating"); *State Mut. Ins. Co. v. Bragg*, 589 A.2d 35, 38 (Me. 1991) (murder and attempted murder); *Perreault v. Me. Bonding & Cas. Co.*, 568 A.2d 1100, 1101-02 (Me. 1990) (sexual abuse of a child).

performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law.

*Worcester Ins. Co.* v. *Fells Acres Day Sch., Inc.*, 558 N.E.2d 958, 964 (Mass. 1990) (alteration omitted) (citations omitted) (quotation marks omitted).

[¶27] The, "I hit him on purpose, but didn't intend to hurt him *that* badly" excuse cannot, as a matter of common sense or public policy, be invoked to shift the actor's personal responsibility onto an insurer who issues a general policy indemnifying a policyholder against his negligent acts. The Court's decision today, stopping short of joining the *Landry-Perreault* line of cases,[8] *see* Court's Opinion ¶ 18, requires the trial court, in cases involving admittedly intentional assaults upon unsuspecting individuals, to make unnecessary findings regarding the actor's subjective state of mind as to the likelihood and extent of the victim's anticipated injuries. The facts of such cases *compel*—as I conclude here—a finding that the actor must have subjectively foreseen that

---

[8] In *Landry*, we said that, given the defendant's act, "it is so highly likely that bodily injury [would] result that we will deem willing participation . . . to be the intent or expectation to cause the bodily injury." 1998 ME 241, ¶ 9, 720 A.2d 907. Similarly, in *Perreault* we said that "[h]arm from the [plaintiff's act] [was] so highly likely to occur that the intent to commit the act inherently carries with it the intent to cause the resulting injury." 568 A.2d at 1101. I would apply the same rationale to Francoeur's conduct.

his deliberately violent conduct would result in the injury that proximately resulted from the assault.[9]

[¶28]  This approach is well in keeping with public policy.  As we stated in *Landry v. Leonard*:

> Public policy is also a consideration in reaching [our] conclusion. The general rule is that it is against public policy for insurance to indemnify an insured against his own criminal acts.  People who purchase homeowners' policies do not intend that victims' injuries caused by convicted robbers during an armed robbery be covered by the robber's insurance nor do they expect to pay premiums to share in the coverage of such risks.  Our holding today is consistent with public policy.

1998 ME 241, ¶ 11, 720 A.2d 907 (citation omitted).

[¶29]  I concur in the Court's decision vacating the Superior Court's judgment and remanding for a judgment in favor of Vermont Mutual, but I would add admittedly intentional assaults to our existing case law that imputes intent and expectation of injury to specific acts and the injuries that proximately result from those acts.

---

[9]  The rule of law that I favor, articulated in *Clark*, 529 P.2d at 1196-97, is limited to assaults that are undeniably intentional.  As the Court notes, Court's Opinion ¶ 18 n.5, the *crime* of assault can be committed recklessly, and recklessness would not provide the basis for the intentional act exclusion. The rule that I would adopt applies only to intentional assaults and the injuries proximately resulting therefrom.

18

James D. Poliquin, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellant Vermont Mutual Insurance Company

Alicia F. Curtis, Esq. (orally), and James E. O'Connell III, Esq., Berman & Simmons, P.A., Lewiston, for appellee Jonathan Ben-Ami

York County Superior Court docket numbers CV-2014-22 and -194
FOR CLERK REFERENCE ONLY