2005 ME 68

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

v.

**Michael MONTAGNA et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: May 17, 2005.

Decided: June 10, 2005.

Christopher C. Dinan, Esq., Monaghan Leahy, LLP, Portland, for plaintiff.

James M. Bowie, Esq., Thompson & Bowie, LLP, Portland, Michael P. Turndorf, Esq., Brunswick, for Jason Pease.

Roger J. Katz, Esq., Karen E. Boston, Esq., Lipman, Katz & McKee, P.A., Augusta, for Michael Montagna.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Michael Montagna and Jason Pease appeal from a summary judgment entered by the Superior Court (Cumberland County, *Warren, J.*) in favor of State Farm Mutual Automobile Insurance Company. Montagna contends that the trial court erred in declaring that State Farm was not obligated to defend or indemnify Montagna in a negligence action filed by Pease. Because Montagna was not in lawful possession of the stolen vehicle with which he caused injury to Pease, we affirm the judgment.

### I. CASE HISTORY

[¶ 2] On December 25, 2002, Jason Pease, a Detective Sergeant with the Lincoln County Sheriff's Office, was dispatched to a home in Jefferson in response to a call from Michael Montagna. Pease, wearing his police uniform, drove to the home in a marked Lincoln County Sheriff's vehicle. After a discussion between Montagna and Pease, Montagna ran from Pease and jumped into Pease's patrol vehicle. Montagna had no permission to take the vehicle. Pease ran to the vehicle, opened the door and "grabbed at" Montagna to prevent him from taking the vehicle. While Montagna was operating the vehicle, it struck Pease. Pease then fired his service revolver three times in the direction of the vehicle.

[¶ 3] Pease commenced a negligence action against Montagna. At the time of the incident, Montagna was insured under an automobile insurance policy issued by State Farm. Montagna asserted that State Farm was required to: (1) provide him with a defense for Pease's pending action, and (2) indemnify him for any judgment entered in favor of Pease.

[¶ 4] Montagna's policy provides that State Farm will "defend any suit against *insured* for ... damages" covered by the policy, (emphasis in policy). The policy provides Montagna with coverage for certain damages that he is "legally liable to pay" that result from "the ownership, maintenance or use of [his] *car.*"[1] The policy also provides coverage for Montagna's "use" of ... "a *non-owned car.*" The policy specifies that "a *non-owned car* must be a car in the lawful possession of the *person* operating it."

[¶ 5] The Maine Motor Vehicle Liability Policy Endorsement, at the end of the policy, provides that:

[T]he Liability coverage afforded by the policy, subject to the limits of the financial responsibility requirements of Maine, also applies to:

---

1. The policy states that coverage is provided for *"your car,"* which it defines as the vehicle described on the declarations page. In Montagna's policy, the car described on the declarations page was a 1995 Saab 9000.

1. *you,* if an individual or husband and wife and the owner of your car

. . . .

with respect to the operation or occupancy of *any other car* or truck-tractor designed to pull a trailer or semi-trailer by: (emphasis added)

1. *you;*

2. *your spouse;* or

3. *your* private chauffeur or domestic servant.

A "car" is defined by the policy as "a land motor vehicle with four or more wheels, which is designed for use mainly on public roads."

[¶ 6] State Farm filed a complaint for a declaratory judgment against Montagna and Pease to establish its and the parties' rights and responsibilities under its insurance policy. The Superior Court entered a summary judgment in favor of State Farm. The court held that if the Maine Motor Vehicle Liability Policy Endorsement was "considered independently of the rest of the policy" then it "would agree that the endorsement is ambiguous and [it] would ... result in coverage." The court determined, however, that it "must look at the entire document and should not interpret the contract in a way that renders any of its provisions meaningless." Thus, the court interpreted the language in the endorsement to be subject to the policy language excluding coverage for operation of a car not "in the lawful possession of the person operating it." Montagna and Pease then brought this appeal.

## II.  LEGAL ANALYSIS

[¶ 7] Here, there are no material facts in dispute. Accordingly, we review the grant of the motion for summary judgment de novo. *See Inkel v. Livingston,* 2005 ME 42, ¶ 4, 869 A.2d 745, 747.

[¶ 8] Whether an insurer has a duty to defend in a particular case is a question of law. *York Ins. Group v. Lambert,* 1999 ME 173, ¶ 4, 740 A.2d 984, 985. We "determine the duty to defend by comparing the allegations in the underlying complaint with the provisions of the insurance policy." *Id.* (quotation marks omitted).  A duty to defend exists "if a complaint reveals a potential that the facts ultimately proved may come within the coverage." *Id.* (quotation marks omitted). An insurance contract must be construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. *Am. Prot. Ins. Co. v. Acadia Ins. Co.,* 2003 ME 6, ¶ 12, 814 A.2d 989, 993. Further, "[a]ll parts and clauses must be considered together [so] that it may be seen if and how one clause is explained, modified, limited or controlled by the others." *Id.*

[¶ 9] When the State Farm Insurance policy is interpreted as a whole, it is not reasonably susceptible to different interpretations, and therefore it is not ambiguous.  The State Farm policy provides coverage only for: (1) the operation of the vehicle listed in the policy ("your car"); (2) a "newly acquired car"; (3) a "temporary substitute car" that is used "with the consent of the owner"; or (4) "a non-owned car" that is "in the lawful possession of the person operating it."

[¶ 10] Montagna's conduct on December 25, 2002, is not covered by the State Farm policy because Montagna was unlawfully operating a vehicle that did not belong to him, and that had been stolen from its rightful owner.  The words "any other car" in the Maine Motor Vehicle Liability Policy Endorsement must be read in the context of the policy as a whole that properly excludes coverage for the insured's operation of vehicles not in his lawful possession.  This reading is consistent with the rule of construction that in-

surance policies will not be interpreted to require an insurer to defend or indemnify an insured for the insured's own criminal acts. *See Landry v. Leonard,* 1998 ME 241, ¶ 11, 720 A.2d 907, 909 (holding that "[t]he general rule is that it is against public policy for insurance to indemnify an insured against his own criminal acts"); [2] *Perreault v. Me. Bonding & Cas. Co.,* 568 A.2d 1100, 1102 (Me.1990).

The entry is:

Judgment affirmed.

2. The Court in *Landry v. Leonard,* 1998 ME 241, ¶ 9, 720 A.2d 907, 909, concluded that an insurance company did not have a duty to defend the insured plaintiff who had committed a robbery. The Court reasoned that,

> when the robber is a willing participant and knows that a dangerous weapon will be used to threaten the victim with the intent to compel the victim to give up his property or to prevent the victim from resisting the theft, it is so highly likely that bodily injury will result that we will deem willing participation in the crime to be the intent or expectation to cause the bodily injury.

*Id.*