# United States Court of Appeals
## For the First Circuit

Nos. 06-1951, 06-2017

BARRETT PAVING MATERIALS, INC.,
Plaintiff-Appellee, Cross-Appellant,

v.

CONTINENTAL INSURANCE COMPANY,
Defendant, Appellant,

FIRST STATE INSURANCE COMPANY,
Defendant, Cross-Appellee,

MICHIGAN MUTUAL INSURANCE COMPANY,
Defendant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Circuit Judge,
Selya, Senior Circuit Judge,
and Tashima,[*] Senior Circuit Judge.

John T. Harding, Jr., with whom Michael F. Aylward and Morrison Mahoney LLP, were on brief, for appellant.
Jeffrey T. Edwards, with whom Preti, Flaherty, Beliveau & Pachios, LLP, was on brief, for appellee.
Mark D. Cahill, with whom Terrence M. Schwab and Choate, Hall & Stewart LLP, were on brief, for cross-appellee.

May 30, 3007

---

[*] Of the Ninth Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** This case arises out of a dispute between Barrett Paving Materials, Inc. ("Barrett") and three of its insurers concerning the insurers' respective duties to defend Barrett against a third party complaint for contribution on a claim for environmental clean-up costs. The district court ordered two of the insurers, Continental Insurance Company ("Continental") and Michigan Mutual Insurance Company ("Michigan Mutual"), to share the costs of Barrett's defense and to pay Barrett's legal fees incurred in prosecuting the instant case. The court granted summary judgment in favor of the third insurer, First State Insurance Company ("First State"). Continental now appeals from the court's rulings against it, and Barrett appeals from the court's ruling in favor of First State. After careful consideration, we affirm on all grounds.

## I. Background

The City of Bangor, Maine, sued Citizens Communications Company ("Citizens"), claiming that Citizens's manufactured gas plant had been discharging pollutants into the Penobscot River since 1851. See City of Bangor v. Citizens Commc'ns Co., 437 F. Supp. 2d 180 (D. Me. 2006). Citizens then brought a third party complaint (the "Citizens complaint") against Barrett and other neighboring facilities for contribution and/or indemnification on the City's claims, alleging that those facilities were to blame for

-2-

the pollution.  In its most detailed allegations, the complaint against Barrett states:

> 12. Barrett . . . acquired the Barrett Plant in or about 1979.
>
> . . . .
>
> 15. On one or more occasions since Barrett . . . has owned and operated the Barrett Plant, asphalt materials containing poly-aromatic hydrocarbons, also known as PAHs, were released from the Barrett Plant into the Penobscot River.
>
> 16. Upon information and belief, the soil at the Barrett Plant is contaminated with substances that contain PAHs.
>
> 17. Sewers historically located in or near the Barrett Plant drained, directly and without treatment, into the Penobscot River.
>
> 18. Tidal action of the Penobscot River causes contamination from the Barrett Plant to be flushed into the river.
>
> . . . .
>
> 25. Upon information and belief, releases of hazardous materials into the Penobscot have occurred on one or more occasions at the Barrett Plant.

Barrett, in turn, sued Continental, Michigan Mutual, and First State in the United States District Court for the District of Maine, seeking a declaration that the three insurers were required to defend it against the Citizens complaint, after its tender of the defense was rejected.  Barrett also sought money damages for the insurers' failure to defend.

Barrett's claim against Continental was based on three primary liability insurance policies. Each of the policies contains an exclusion from coverage for pollution-related liabilities except when "[a] discharge, dispersal, release or escape is sudden and accidental." Barrett stipulated that it was unaware of any sudden or accidental discharges from its plant into the Penobscot River, but contended that nonetheless Continental was obliged to defend Barrett against the Citizens complaint.

With respect to First State,[1] Barrett's claim was based on one of three excess umbrella liability policies. The relevant First State policy applied in excess of an underlying primary liability insurance policy issued by Midland Insurance Company ("Midland").[2] Midland is now insolvent, such that the insurance is not collectible. Barrett has no copy of the Midland policy and no knowledge of its terms and conditions. Even so, it is undisputed that the Midland policy has not been exhausted as a result of claims paid on behalf of Barrett. The First State policy states that the insurer has a duty to defend "[w]ith respect to any OCCURRENCE not covered, as warranted, by the underlying policies

---

[1] Michigan Mutual does not appeal, and therefore we need not describe the claims against it or the related procedural history.

[2] Both the First State policy and the Midland policy went into effect on December 14, 1979. The excess liability policy remained in effect after the Midland policy expired; Barrett then obtained the Continental policy to replace the Midland primary policy. The Continental policy went into effect on February 15, 1980, the same day that the Midland policy expired.

listed in Schedule A [t]hereof, whether collectible or not, or not covered by any other underlying insurance collectible by the INSURED, but covered by the terms and conditions of [the First State] policy." Schedule A of the First State policy lists general categories of insurance policies and their respective liability limits. One of the general categories is "Comprehensive General Liability" insurance. The schedule does not list any specific policies by name or number.

First State and Continental filed separate motions for summary judgment, and Barrett filed a motion for partial summary judgment. A magistrate judge recommended that First State's motion be granted, that Barrett's motion be granted as to Continental, and that Continental's motion be denied. The magistrate determined that First State was not required to defend Barrett because the Midland policy was a scheduled underlying policy to the First State policy, even though Schedule A did not specifically reference the Midland policy. With respect to Continental, the magistrate concluded:

> The underlying complaint's general allegations did not foreclose the potential that Continental could have liability to Citizens on the basis of any sudden and accidental discharge of pollutants that might be proved by Citizens. That legal conclusion is virtually compelled by the Law Court's opinion in Travelers Indemnity Company v. Dingwell, 414 A.2d 220 (Me. 1980).

The magistrate further recommended that Barrett be awarded attorneys' fees incurred in the declaratory judgment action against Continental. The district court adopted the magistrate's recommended decision.

After a bench trial on issues related solely to Michigan Mutual, the district court entered final judgment on May 22, 2006. The court ordered Continental to pay Barrett $142,500 for defense costs incurred in defending the third party complaint and $20,376.22 for attorneys' fees incurred in the declaratory judgment action. Continental appeals from the judgment against it, and Barrett appeals from summary judgment in favor of First State.

## II. Standard of Review

We review a grant of summary judgment de novo. N.H. Ins. Co. v. Dagnone, 475 F.3d 35, 37 (1st Cir. 2007). Where there are no material facts in dispute, as here, summary judgment is appropriate if the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). We review an award of attorneys' fees for abuse of discretion. First State Ins. Group v. Nationwide Mut. Ins. Co., 402 F.3d 43, 44 (1st Cir. 2005).

## III. Discussion

### A. Continental's duty to defend

Both Continental and Barrett agree that Maine law employs the "comparison test" to determine whether an insurer has a duty to defend an insured. See Travelers Indem. Co. v. Dingwell, 414 A.2d

220, 224 (Me. 1980). The reviewing court is required to "[lay] the underlying damage complaint[] alongside the insurance policy and then determine[] [whether] the pleadings [are] adequate to encompass an occurrence within the coverage of the policy." Id. (quoting Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co., 373 A.2d 247, 249 (Me. 1977)). Maine law is very clear that the inquiry "is based exclusively on the facts as alleged rather than on the facts as they actually are." Id. (quoting Cumberland Cold Storage Co., 373 A.2d at 249).

Continental reads the Citizens complaint as alleging that Barrett was responsible for discharges as a result of routine business operations over several decades, as opposed to a "sudden and accidental" discharge, which would trigger Continental's duty to defend. As such, Continental argues that this case is analogous to A. Johnson & Co. v. Aetna Cas. & Sur. Co., 933 F.2d 66 (1st Cir. 1991) (applying Maine law). In that case, we found no duty to defend under a "sudden and accidental" discharge exception to a pollution exclusion worded identically to the Continental policy exception, because "the [underlying allegations] make[] clear that pollution and contamination has taken place as a concomitant of the [alleged polluter]'s regular business activity . . . over an extended period of time, rather than as a result of a 'sudden and accidental' release." Id. at 74. In support of its reading of the

Citizens complaint, Continental points to Barrett's denial that any sudden and accidental discharges have ever occurred.

Barrett, on the other hand, like the magistrate judge, believes that Dingwell, 414 A.2d 220, compels the conclusion that Continental has a duty to defend Barrett against the Citizens complaint. We agree. In Dingwell, the Supreme Judicial Court of Maine held that an insurer had a duty to defend the insured pursuant to a "sudden and accidental" discharge exception, where the underlying complaint alleged only that wastes from the insured's facility had permeated the ground and polluted the water table and a major watercourse. Id. at 226-27. Notably, the allegations against the insured did not specify how the wastes were released from the facility such that they were able to permeate the ground, i.e., whether the discharges were sudden and accidental or the result of regular operations. Id. at 224-25. Thus, the Dingwell court held that the insurer was required to defend the insured because the conclusory nature of the underlying complaint left open the "potential that liability [would] be established within the insurance coverage." Id. at 226.

By contrast, in A. Johnson, the allegations against the insured "contained factual details which were totally inconsistent with any view that the pollution at the [relevant] site was 'sudden and accidental.'" 933 F.2d at 72. The insured was engaged in the waste disposal business and was accused of polluting the

-8-

surrounding area. The allegations specifically described how the discharges occurred: "[H]azardous substances . . . were disposed of at the Site and in such a manner that they have been or are being released into the soil and ground water posing a threat to the environment and to the health of the residents of the area. . . . [For example, c]racked tanks were observed in a leaking condition which released their contents onto the ground." Id. at 74-75.

Here, the Citizens complaint alleges only that Barrett has discharged pollutants that have found their way to the Penobscot River via sewers and tidal action. As in Dingwell, the complaint does not specify how the pollutants may have been released from the facility into the soil or the sewers, i.e., suddenly and accidentally, or through routine operations. Moreover, the underlying allegations are not entirely inconsistent with a sudden and accidental discharge, as were those described in A. Johnson. Thus, based solely on the allegations in the Citizens complaint, the Continental policy potentially covers Citizens's claims against Barrett,[3] and therefore Continental has a duty to defend its insured.

---

[3] Continental argues that the possibility of coverage is highly speculative and theoretical, as opposed to "potential." When the complaint does not address how a discharge occurred and there are no factual allegations inconsistent with a sudden and accidental discharge, however, it is equally speculative and theoretical that pollutants were discharged in any way other than suddenly and accidentally.

Continental points out that, in reality, there is no possibility that the Citizens allegations fall within its coverage because Barrett stipulated that it was not aware of any sudden or accidental discharges from the Barrett Plant. The "true facts" of the situation, however, are relevant only to Continental's ultimate duty to indemnify, not to its duty to defend. Dingwell, 414 A.2d at 224. Our review is limited to a comparison of the underlying complaint with the language of the insurance policy.

Continental finally argues that it is Barrett's burden to prove that the exception to the pollution exclusion applies in this case, but that Barrett made no effort to meet its burden. While it is true that the "the insured bears the burden to establish, for purposes of indemnification, that this exception . . . has been satisfied," A. Johnson, 933 F.2d at 76 n.14, Barrett has met its burden with respect to the comparison test. Barrett has provided us with both the underlying complaint and the insurance policy, which show that the Continental policy potentially covers the Citizens allegations.

## B. Attorneys' fees

Continental next challenges the district court's award of attorneys' fees incurred by Barrett in prosecuting the instant declaratory action. Under Maine law,

> an award of attorney fees to the insured is appropriate when it is clear from a comparison of the insurance policy and the complaint that the insurance company is potentially liable to

> indemnify the insured. An award of attorney fees is not appropriate if the law is unsettled with respect to a duty to defend a particular action or if the possibility that the insurance policy requires coverage is "not something that [i]s obvious on the face of the complaint."

Me. Mut. Fire Ins. Co. v. Gervais, 745 A.2d 360, 363 (Me. 1999). Continental argues that it was "entirely within its rights to deny that it had an obligation to defend the Citizens Third Party Complaint based upon the express policy language and the Court's decision in A. Johnson," and therefore that it should not be required to pay attorneys' fees.

We cannot say, however, that the district court abused its discretion in awarding attorneys' fees in this case. Given the factual distinctions between A. Johnson and Dingwell, it is fairly clear to us, as it was to the district court and the magistrate judge, that Continental was potentially liable to indemnify Barrett. Furthermore, Maine law concerning the duty to defend in circumstances such as these is well-settled. Dingwell made clear that Barrett would not be required to establish that the Citizens complaint conclusively alleged a sudden and accidental discharge; rather, Barrett was only required to show that Citizens's claims, as stated in its complaint, were potentially covered under the Continental policy. See 414 A.2d at 226-27 ("The correct test is whether a potential for liability within the coverage appears from whatever allegations are made. . . . We see no reason why the

-11-

insured, whose insurer is obligated by contract to defend him, should have to try the facts in a suit against his insurer in order to obtain a defense.").

## C. First State's duty to defend

Under the First State umbrella policy, First State has a duty to defend Barrett against allegations that are covered by the terms and conditions of the umbrella policy when those allegations are not covered by either (1) an underlying policy listed in Schedule A, without regard to the collectibility of the policy, or (2) a collectible underlying policy not listed in Schedule A. In this case, First State's duty to defend Barrett against the Citizens complaint thus depends on whether the Midland policy is listed in Schedule A; if so, whether the Midland policy covers the Citizens allegations; whether any other underlying policy that is either scheduled or collectible covers the allegations; and whether the allegations are otherwise covered by the First State policy.

The last two issues are not seriously in dispute. Like the Continental policy, the First State policy has a pollution exclusion and related "sudden and accidental" discharge exception. As discussed above, the Citizens allegations are potentially covered by such policy language. Thus, under the comparison test, First State has a duty to defend if the policy otherwise comes into play. See Dingwell, 414 A.2d at 227 ("[T]he complaint here does generate a duty to defend, because it discloses a potential for

-12-

liability within the coverage and contains no allegation of facts which would necessarily exclude coverage." (emphasis omitted)).

First State argues that the Continental policy is an "other" underlying policy potentially covering the Citizens complaint, and therefore that First State has no duty to defend Barrett regardless of the status of the Midland policy. The problem with this argument is that the Continental policy and the Midland policy were not in effect at the same time. As First State stipulated, the Midland policy provided coverage from December 14, 1979 to February 15, 1980, and the Continental policy "replaced" the Midland policy for the remainder of the relevant umbrella policy's coverage period. The Citizens complaint does not specify when the alleged discharges occurred, but alleges only that one or more discharges occurred since 1979, when Barrett acquired the Bangor facility. Thus, Barrett is potentially liable for discharges that occurred during the time period covered by the Midland policy. Because Midland is no longer available to defend it, Barrett is seeking a defense based on First State's excess coverage for that same time period. The Continental policy was not in effect during that period, and the parties do not suggest that Barrett was covered by any other liability policy during that period. Therefore, there are no "other" policies that might affect First State's duty to defend Barrett based on the excess coverage over the Midland policy.

Given that the First State umbrella policy otherwise potentially covers the Citizens complaint, and no other liability policies cover the relevant allegations, First State's duty next depends on whether the Midland policy is listed in Schedule A, a matter that the parties dispute. Under Maine law, "[a]n insurance contract must be construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument." State Farm Mut. Auto. Ins. Co. v. Montagna, 874 A.2d 406, 408 (Me. 2005). The interpretation of an unambiguous contract is a matter of law, the review of which is limited to "the plain meaning of the language used and . . . the four corners of the instrument without resort to extrinsic evidence." Am. Prot. Ins. Co. v. Acadia Ins. Co., 814 A.2d 989, 993 (Me. 2003) (quoting Portland Valve, Inc. v. Rockwood Sys. Corp., 460 A.2d 1383, 1387 (Me. 1983)). On the other hand, the interpretation of an ambiguous contract is ordinarily a question of fact. Id. Whether a contract is ambiguous, i.e., "reasonably susceptible of different interpretations," is a question of law determined by the reviewing court. Id. (quoting Acadia Ins. Co. v. Buck Constr. Co., 756 A.2d 515, 517 (Me. 2000)). "[I]f the language of an insurance policy is ambiguous or susceptible of varying interpretations, then the policy 'is construed against the insurer in favor of coverage.'" Geyerhahn v. U.S. Fid. & Guar. Co., 724 A.2d 1258, 1261 (Me. 1999)

-14-

(quoting Genthner v. Progressive Cas. Ins. Co., 681 A.2d 479, 482 (Me. 1996)).

Barrett first argues that the Midland policy cannot be "listed in Schedule A" because the schedule nowhere mentions the word "Midland" or any policy number. In support of this argument, Barrett describes the schedule as a blank form with places to list specific policies, but with no policies actually listed. In fact, there is no indication that Schedule A is supposed to be filled in with specific policies. Rather, the schedule only lists broad categories of policies and specifies the limits of liability for each category. Accordingly, we read the First State policy as unambiguously incorporating into Schedule A all underlying policies that fall within the broad categories listed.[4]

One of those categories is entitled "Comprehensive General Liability." The parties stipulated that the Midland policy was a primary liability insurance policy, which we interpret as comprehensive general liability coverage. The parties do not suggest otherwise. Therefore, as a matter of contract

---

[4] Our interpretation is supported by a reading of the insurance policy as a whole. See Montagna, 874 A.2d at 408. The purpose of an umbrella policy is to provide coverage for losses in excess of the limits of liability of underlying policies. It would make little sense if the umbrella policy provided for no underlying policies. A policy is ambiguous if "an ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought." Geyerhahn, 724 A.2d at 1261. Here, it is difficult to see how Barrett could have reasonably assumed that the very policy for which it purchased the umbrella policy as excess coverage was not included in Schedule A.

interpretation, we conclude that the Midland policy is a scheduled underlying policy under the plain language of the First State umbrella policy.

Because the Midland policy is listed in Schedule A, First State has a duty to defend Barrett only if the Midland policy does not cover the Citizens allegations. The burden is on Barrett to establish that the allegations fall within the scope of the First State policy's coverage. See Pelkey v. Gen. Elec. Capital Assur. Co., 804 A.2d 385, 387 (Me. 2002) ("It is [the insured]'s burden . . . to show that his injury falls within the scope of the [insurance] contract."); see also A. Johnson, 933 F.2d at 76 n.14 ("[I]t appears that the insured bears the burden to establish, for purposes of indemnification, that this exception to the 'pollution exclusion' has been satisfied.") (citing 19 G. Couch, Couch on Insurance § 79:385 (2d ed. 1983)). Barrett stipulated that it did not have a copy of the Midland policy and that it otherwise has no knowledge of the policy's terms and conditions. Absent any attempt to reconstruct the Midland policy or show that it does not cover the Citizens complaint, Barrett cannot meet its burden, and we must affirm the judgment in favor of First State. See Ingram v. Brink's, Inc., 414 F.3d 222, 229 (1st Cir. 2005) ("[S]ummary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation.").

## IV. <u>Conclusion</u>

For the foregoing reasons, we affirm the district court's judgment against Continental and its entry of summary judgment in favor of First State.  Costs are granted in favor of Barrett with respect to Continental's appeal, and in favor of First State with respect to Barrett's appeal.

**Affirmed**.