2007 ME 134

**Jason PEASE**

v.

**STATE FARM MUTUAL AUTO-MOBILE INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued: May 22, 2007.
Decided: Sept. 20, 2007.

See also 874 A.2d 406.

---

James M. Bowie (orally), Thompson & Bowie, LLP, Portland; Michael P. Turndorf, Brunswick, for plaintiff.

Robert V. Hoy (orally), Hoy & Main, P.A., Gray, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, SILVER, and MEAD, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and MEAD, JJ.

Concurrence: SILVER, J.

MEAD, J.

[¶ 1] Jason Pease appeals from a judgment entered in the Superior Court (Lincoln County, *Cole, J.*) granting State Farm Mutual Automobile Insurance Company's motion for a summary judgment on Pease's complaint for uninsured motorist (UM) coverage under his State Farm personal insurance policy. Pease contends that the court erred in its determination that State Farm's UM policy exclusion for vehicles furnished for the insured's regular use is valid pursuant to Maine's UM statute, 24–A M.R.S. § 2902(1) (2005).[1] Because we conclude that the policy exclusion does not apply to the vehicle stolen from Pease, we vacate the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] The facts are not disputed. On December 25, 2002, Jason Pease, a detective sergeant in the Lincoln County Sheriff's Office, was at home off-duty when he was dispatched to a reported disturbance at a home in Jefferson. Pease drove his unmarked patrol vehicle to the scene. Upon arrival, Pease got out of his vehicle, leaving the engine running. He approached Michael Montagna, the individual causing the disturbance. Montagna told Pease that he had been drugged and that people were out to get him. At some point during the encounter, Montagna ran away and got into the driver's seat of Pease's vehicle. Pease tried to pull Montagna out of the vehicle, but was knocked down by the car door as Montagna drove in reverse. Montagna then drove over Pease's leg and dragged him for about fifty feet. Pease sustained severe injuries to his knee and suffered lacerations and contusions to other parts of his body.

[¶ 3] Montagna has few resources, and Pease is unable to recover under Montagna's State Farm policy because we determined in an earlier case that Montagna's policy does not cover his unlawful possession of Pease's patrol vehicle. *State Farm Mut. Auto. Ins. Co. v. Montagna,* 2005 ME 68, 874 A.2d 406. Ordinarily, Pease would then look to the uninsured or underinsured provisions of the policy covering the car he was driving.[2] That car was owned and

1. The statute has since been amended. P.L. 2005, ch. 591, § 1 (effective Aug. 23, 2006) (codified at 24–A M.R.S. § 2902(1)(2006)).

2. Pease has received workers' compensation benefits through his employer, but that does not fully substitute for a claim against the person who assaulted him with the vehicle—Montagna.

insured by Lincoln County. The County, however, chose not to carry UM coverage for its employees injured on the job. Thus, Pease sought insurance coverage for his injuries through the UM coverage of his personal insurance policy issued by State Farm.

[¶ 4] State Farm's UM coverage policy loosely tracks the language of the uninsured motorist statute,[3] 24–A M.R.S. § 2902 (2005), and also contains some exclusions to UM coverage. The UM policy provisions read, in part:

> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle.* The *bodily injury* must be sustained by an *insured* and caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle.*
>
> . . . .
>
> An uninsured motor vehicle does not include a land motor vehicle:
>
> 1. insured under the liability coverage of this policy;
>
> 2. *furnished for the regular use of you, your spouse or any relative;*
>
> 3. owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law or any similar law;

4. owned by any government or any of its political subdivisions or agencies;[4]

5. designed for use mainly off public roads except while on public roads; or

6. while located for use as premises.

(Last emphasis added.) Applied to Pease, State Farm's "regular use" exclusion prevents Pease from recovering for injuries he sustained when struck by a vehicle furnished for his regular use. State Farm maintains that this exception applies even though Montagna stole and unlawfully operated Pease's patrol vehicle.

[¶ 5] Pease filed a complaint against State Farm in Superior Court, arguing that he was entitled to coverage under his UM policy. State Farm filed a motion for a summary judgment, which the Superior Court granted. The Superior Court determined that the "regular use" exclusion is valid because it "comports with the intent of Maine's uninsured motorist statute to compel insurers to, 'for a premium, compensate otherwise uninsured injuries.'" The court further explained: "For State Farm to extend coverage to a patrol car owned by the Lincoln County Sheriff's Department and used regularly by [Pease] for both private and law enforcement purposes, it would be assuming a large, and uncompensated risk. Such risk is properly

---

**3.** Title 24–A M.R.S. § 2902(1) (2005) states:

1. No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle. The coverage herein

required may be referred to as "uninsured vehicle coverage." For the purposes of this section, "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.

**4.** We note with disapproval that State Farm continues to include a government vehicle exclusion in its UM policy, despite our holding twenty years ago in *Young v. Greater Portland Transit Dist.,* 535 A.2d 417, 420 (Me. 1987), invalidating the same.

assumed by the Sheriff Department's insurance carrier." Pease filed this appeal.

## II. DISCUSSION

[¶ 6] Pease argues that the "regular use" exclusion is invalid because it contravenes the UM statute and is void against public policy. In the alternative, Pease argues that under the facts of this case, the patrol vehicle was not furnished for regular use, contending that the vehicle was provided for the regular use of the Lincoln County Sheriff's Department, and not solely for his regular use. We do not reach the question of the validity of the policy exclusion because we agree with Pease's contention that under the facts of this case, the vehicle was not furnished for his regular use, though under a different rationale than that argued by Pease.[5]

### A. Standard of Review

[¶ 7] "A summary judgment is proper if the record discloses that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Apgar v. Commercial Union Ins. Co.,* 683 A.2d 497, 498 (Me.1996). The interpretation of an insurance contract exclusion and its applicability is a matter of law reviewed de novo. *Acadia Ins. Co. v. Mascis,* 2001 ME 101, ¶ 9, 776 A.2d 617, 620. "Exclusions and exceptions in insurance policies are disfavored and are construed strictly against the insurer." *Foremost Ins. Co. v. Levesque,* 2005 ME 34, ¶ 7, 868 A.2d 244, 246 (citation omitted). We "must construe the policy and the statutory provision to achieve the primary purpose of the enactment." *Wescott v. Allstate Ins.,* 397 A.2d 156, 167 (Me.1979) (quotation marks omitted).

### B. Whether the Patrol Vehicle Was Furnished for Regular Use

[¶ 8] The threshold issue in this case is whether the patrol vehicle was "furnished for the regular use of you, your spouse or any relative." If we conclude that the policy exclusion does not apply to the patrol vehicle, then we need not evaluate whether the "regular use" exclusion is valid under Maine's UM statute, 24–A M.R.S. § 2902(1).

[¶ 9] In interpreting this policy provision, both parties fail to address what meaning, if any, to ascribe to the fact that Montagna stole the patrol vehicle from Pease before injuring him with it. We find this fact to be dispositive. At the moment Montagna stole the vehicle, it stopped being a vehicle furnished for the deputy's use, and was simply a stolen vehicle.

[¶ 10] We find that a construction of the policy that excludes vehicles stolen from the insured from the "regular use" exclusion is consistent with the "legislative intent . . . to benefit all insured motorists by throwing the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance industry for a premium." *Wescott,* 397 A.2d at 166.

[¶ 11] Our decision is also in accordance with other jurisdictions that have confronted the UM coverage issue of "the insured being injured by an uninsured stealing the insured's own car." *State Farm Mut. Auto. Ins. Co. v. Nissen,* 851 P.2d 165, 167–68 (Colo.1993) (concluding that where insured was severely injured while attempting to stop thief from stealing car, and insurer denied coverage on ground that thief was nonpermissive user of car, insured's car became "uninsured motor ve-

---

5. Pease's argument that there is a genuine issue of material fact regarding whether the patrol vehicle is furnished for his regular use because the vehicle was not solely for *his* regular use lacks merit and we do not address it. *See Allstate Ins. Co. v. Gov't Employees Ins.,* 263 A.2d 78, 81–82 (Me.1970).

hicle" eligible for coverage); *see Comet Cas. Co. v. Jackson*, 125 Ill.App.3d 921, 81 Ill.Dec. 569, 467 N.E.2d 269 (1984) (concluding that insured's automobile was uninsured for purposes of UM coverage claim for injuries resulting from being struck by unknown thief while trying to prevent theft of automobile); *Am. Prot. Ins. Co. v. Parker*, 150 Ga.App. 732, 258 S.E.2d 540, 544 (1979) (permitting UM coverage for insured who granted and subsequently withdrew permission to drive automobile to uninsured, and was subsequently attacked and run over by uninsured after withdrawal of permission); *Longo v. Market Transition Facility of N.J.*, 326 N.J.Super. 316, 741 A.2d 149, 152–53 (App.Div.1999) (concluding that an intoxicated passenger's car driven by a thief or joy rider was an "uninsured motor vehicle" and not a vehicle furnished for regular use because a literal application would produce absurd result of denying UM coverage for a passenger who is a victim of a car-jacking); *see also Guiberson v. Hartford Cas. Ins. Co.*, 217 Mont. 279, 704 P.2d 68, 74 (1985) (concluding that UM coverage was available for employee injured while attempting to stop thief from stealing delivery truck because exclusion of innocent insured from coverage violated public policy); *Fontanez v. Texas Farm Bureau Ins. Cos.*, 840 S.W.2d 647, 650 (Tx.App.1992) (concluding that UM coverage available for insured struck and killed by uninsured thief attempting to steal vehicle because contrary interpretation would violate purpose and intent behind UM statute). Accordingly, the UM "regular use" policy exclusion is inapplicable in this case, and we do not address whether the exclusion is valid under Maine's UM statute.

The entry is:

Summary judgment vacated and remanded to the Superior Court for further proceedings consistent with this opinion.

SILVER, J., concurring.

[¶ 12] I concur in the result but not in the reasoning of the Court. The Court very narrowly interprets the State Farm policy in order to avoid a conflict with the uninsured motorist statute. I would find that the "regular use" exclusion violates the uninsured motorist statute. I also write to point out that Lincoln County did not provide UM coverage to Officer Pease.

[¶ 13] "The purpose of section 2902 is to permit an insured injured person the same recovery which would have been available to [him or] her had the tortfeasor been insured to the same extent as the injured party." *Skidgell v. Universal Underwriters Ins. Co.*, 1997 ME 149, ¶ 8, 697 A.2d 831, 833. The statute does not refer to exclusions at all, and we have said that we will not sanction reductions in coverage for which the Legislature has not provided. *See id.* ¶ 9, 697 A.2d at 834. Thus, even if the exclusionary language in State Farm's policy is explicit and unambiguous, it cannot prevail if it is contrary to the UM statute or public policy. *See id.* ¶ 7, 697 A.2d at 833.

[¶ 14] In accordance with these principles, we have never upheld any other exclusion to UM coverage outside some variation on the owned-uninsured exception, despite State Farm's suggestions to the contrary. Quite the opposite, Maine courts have repeatedly held that insurers may not limit UM coverage by adding restrictive language to their UM policies. Policy exclusions have thus been invalidated if they restrict the right of an insured to recover damages under the UM statute. *See, e.g., Butterfield v. Norfolk & Dedham Mut. Fire Ins. Co.*, 2004 ME 124, ¶ 2, 860 A.2d 861, 862 (holding that an insurer may not restrict UM coverage to claims brought by named insureds for only those injuries sustained by named insureds, as opposed to any individual for whom a

named insured is legally entitled to bring a claim); *Skidgell,* 1997 ME 149, ¶ 6, 697 A.2d at 833 (providing that an insurance company cannot limit UM coverage to passengers in a car, as opposed to a motorcycle); *Young v. Greater Portland Transit Dist.,* 535 A.2d 417, 420 (Me.1987) (invalidating the governmental vehicle exclusion because the statute mandates coverage for all uninsured motorists, without differentiating between financially responsible and financially irresponsible drivers); *Dufour v. Metro. Prop. & Liab. Ins. Co.,* 438 A.2d 1290, 1291 (Me.1982) (recognizing that a pedestrian may recover damages under her UM coverage for injuries caused by the negligence of an uninsured motorist); *Wescott v. Allstate Ins.,* 397 A.2d 156, 167–70 (Me.1979) (finding that the no-consent-to-settlement and excess-escape exclusionary clauses were void as against public policy and in contravention of the uninsured motorist statute); *Murphy v. Allstate Ins. Co.,* 2003 WL 1618565, 2003 Me.Super. Lexis 18 (Jan. 27, 2003) (holding that the UM statute permits recovery for injuries sustained while riding a bicycle).

[¶ 15] Judicial decisions in several states hold that a regular use exclusion in UM coverage is invalid because UM coverage is "portable under all circumstances." *Blazekovic v. City of Milwaukee,* 234 Wis.2d 587, 610 N.W.2d 467, 471 (2000) (quotation marks omitted); *see also Niemann v. Badger Mut. Ins. Co.,* 143 Wis.2d 73, 420 N.W.2d 378, 381 (Ct.App.1988). Viewing UM coverage as "limited personal accident insurance," these courts emphasize that UM coverage is available "at all times and under all circumstances when a named insured sustains injury caused by accident as a result of an uninsured automobile." *Bilbrey v. Am. Auto. Ins. Co.,* 495 S.W.2d 375, 376 (Tex.Civ.App.1973). Unlike liability coverage, UM coverage "inures to the person, not the vehicle." *Gibbs v. Nat'l Gen. Ins. Co.,* 938 S.W.2d 600, 606 (Mo.Ct.App.1997).

[¶ 16] Such reasoning comports with the policy and purpose of Maine's UM statute. Maine precedent has ensured that UM coverage extends to pedestrians, bicyclists, and other insured who are injured while not in their owned-insured vehicle. Construing the UM statute broadly to prohibit such exclusions follows the legislative intent to close coverage gaps rather than endorse patchwork policies that leave responsible, insured consumers without the protection they have paid for. As the majority notes, "[t]he legislative intent is to benefit all insured motorists by throwing the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance industry for a premium." *Wescott,* 397 A.2d at 166.

[¶ 17] If Lincoln County were able to provide UM coverage to on-duty officers, it is unlikely that Pease's claim would ever have reached this Court. It is important to note that many law enforcement officers do not have UM coverage on their patrol vehicles. Therefore, they are denied traditional personal injury protections when involved in an automobile accident with an underinsured driver.