STATE OF MAINE                            SUPERIOR COURT
YORK, ss.                                     CIVIL ACTION
                                         DOCKET NO. CV-2017-0183

|  |  |  |
|---|---|---|
| NATIONAL WRECKER, INC. | ) | |
| | ) | |
| Plaintiff, | ) | ORDER ON |
| | ) | CROSS-MOTIONS FOR |
| v. | ) | SUMMARY JUDGMENT |
| | ) | |
| PROGRESSIVE CASUALTY | ) | |
| INSURANCE CO. | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff National Wrecker, Inc. ("NWI") brings this "reach-and-apply" action against

Defendant Progressive Casualty Insurance Company ("Progressive") under 24-A M.R.S. § 2904,

seeking to recover towing and storage costs that have been reduced to a final judgment against

non-party insured Fred Muluya d/b/a Anakiya Trucking ("Muluya") in the amount of

$26,540.00. NWI also seeks the entry of a declaratory judgment against Progressive pursuant to

14 M.R.S. §§ 5951-5953, stating that NWI is entitled to collect its judgment against Muluya

from Progressive. NWI and Progressive have each moved for summary judgment on NWI's

claims pursuant to M.R. Civ. P. 56.

## I. Summary Judgment Factual Record

The material facts of this case are not in dispute, and the parties have submitted a joint

Stipulation of Fact ("SF") in support of their respective motions for summary judgment.

In the early morning hours of December 20, 2016, NWI received a request for service

from the Eliot Police Department regarding a single-vehicle accident involving a large box

owned by Muluya ("the Truck") that had crashed into a ditch. NWI responded by sending two

wrecker trucks to the scene, whereupon NWI employees observed the box had broken away from

1

the Truck's frame and its front axle had snapped, puncturing its fuel tank, and causing diesel fuel to leak onto the ground. (SF ¶¶ 6-10.)

NWI employees pumped the remaining fuel from the Truck's tank to prevent additional leakage, and laid absorbent pads over the diesel fuel that had spilled and was running into a culvert under a nearby driveway. NWI did not perform any additional remediation work. In order to make recovery of the Truck easier, NWI employees transferred its cargo into a second truck owned by Muluya. NWI used both of its wreckers to pull the Truck out of the ditch before towing it to NWI's Eliot, Maine facility, where it continues to sit. Debris from the crashed truck was removed from the scene. (*Id.* ¶¶ 11-17.)

At the time of the crash, the Truck was insured under a Commercial Auto Policy ("the Policy") issued by Progressive to Muluya. The Policy provides for $5,000 in compulsory property damage liability and $100,000 in optional property damage liability. (*Id.* ¶¶ 4-5.)

Part I of the Policy provides that Progressive "will pay damages . . . for bodily injury, property damage, and covered pollution costs or expense, for which an insured becomes responsible because of an accident arising out of the ownership, maintenance or use of that insured auto." The term "property damage" is defined as "damage to tangible property including any applicable sales tax and the costs resulting from loss of use of the damaged property." Coverage under Part I of the policy is limited by an exclusion for "[p]roperty damage to, or covered pollution cost or expense involved in, any property owned by, rented to, being transported by, used by, or in the care, custody or control of the insured, including any motor vehicle operated or being towed. . . ." (*Id.* ¶¶ 22-23, 25.)

Part II of the Policy, which Muluya did not elect to purchase, would have obligated Progressive to "pay for loss to your insured auto and its permanently attached equipment when it

2

collides with another object or overturns" as well as "[a]ll reasonable expenses necessary to remove an insured auto from the site of an accident or loss and transport it to a repair facility." (*Id.* ¶¶ 27, 29-30.)

A general section of the Policy establishes the insured's duties in the event of an accident or loss, providing that: "A person seeking coverage must . . . [t]ake reasonable steps after a loss to protect the insured auto from further loss. [The insurer] will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy." (*Id.* ¶ 24.)

NWI initiated a civil action against Muluya to recover payment on Muluya's unpaid invoice for recovery and remediation services, site clean-up, towing fees, and storage of the Truck after the December 20, 2016 accident. NWI notified Progressive of the action against its insured. NWI obtained a judgment against Muluya in that case, captioned *Nat'l Wrecker, Inc. v. Fred Muluya d/b/a Anakiya Trucking*, ALFSC-CV-2017-0045, in the amount of $26,540.00, representing $19,100 in storage fees and $7,440 for remediation services, clean-up at the scene of the accident, and recovery and towing of the Truck. Progressive has declined to pay any portion of NWI's judgment against Muluya, taking the position that NWI's services were not covered under the Policy. (*Id.* ¶¶ 18-21, 31.)

## II.   Discussion

The narrow question before the Court is whether, and to what extent, the costs NWI reduced to a final judgment against Muluya, Progressive's insured, are covered under the Policy such that Progressive is obligated to pay those amounts to NWI pursuant to the "reach-and-apply" statute, 24-A M.R.S. § 2904.

3

NWI contends the costs reflected in the judgment award are covered under the Policy's "Duty to Protect" and "Property Damage" provisions, while Progressive maintains they are not. Progressive further argues that because the underlying final judgment awarded damages for unpaid services, rather than property damage, Progressive cannot be held liable under section 2904.

### A. Summary Judgment Standard, Interpretation of Insurance Contracts, and the Reach-and-Apply Statute

Summary judgment is proper where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c).

"The meaning of language in an insurance policy is a question of law." *Jipson v. Liberty Mut. Fire Ins. Co.*, 2008 ME 57, ¶ 10, 942 A.2d 1213 (citing *Jack v. Tracy*, 1999 ME 13, ¶ 8, 722 A.2d 869). In determining whether coverage exists under an insurance contract, the Court must evaluate "the instrument as a whole[,]" considering "if and how far one clause is explained, modified, limited or controlled by the others." *Id.* (quoting *Me. Drilling & Blasting, Inc. v. Insurance Co. of N. Am.*, 665 A.2d 671, 675 (Me. 1995)) (internal quotation marks omitted).

Ambiguities in an insurance contract are "construed in favor of the insured." *Id.* (citing *York Ins. Group v. Van Hall*, 1997 ME 230, ¶ 8, 704 A.2d 366). "Contractual language is ambiguous if it is 'reasonably susceptible of different interpretations.'" *Id.* (quoting *Cambridge Mut. Fire. Ins. Co. v. Vallee*, 687 A.2d 956, 957 (Me. 1996)). "Exclusions and exceptions in insurance policies are disfavored and are construed strictly against the insurer." *Pease v. State Farm Mut. Auto. Ins. Co.*, 2007 ME 134, ¶ 7, 931 A.2d 1072 (quotation marks omitted).

"[T]he party seeking to recover pursuant to the reach and apply statute . . . has the burden to demonstrate that her awarded damages fall within the scope of the insurance contract." *Jacobi v. MMG Ins. Co.*, 2011 ME 56, ¶ 14, 17 A.3d 1229; *see also* 24-A M.R.S. § 2904 ("Whenever

4

any person . . . recovers a final judgment against any other person for any loss or damage specified in [24-A M.R.S. §] 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment . . . if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage. . . ."); 24-A M.R.S. § 2903 ("The liability of every insurer which insures any person against accidental loss or damage . . . on account of accidental damage to property shall become absolute whenever such loss or damage, for which the insured is responsible, occurs. . . .")

## B. Coverage Under the "Duty to Protect" Provision

NWI cites voluminous authority for the proposition that towing, recovery, and storage expenses incurred with respect to an insured vehicle are covered by operation of an insurance policy's "duty to protect" clause. (*See* Pl.'s Mot. at 6-10.)

Progressive counters that the cases cited by NWI are inapposite because they involved policies that provided first-party coverage for the insured's auto, and therefore the rationale underlying those decisions—that an insurer cannot at once require its insured to take steps to mitigate damages the insurer is obligated to pay, while simultaneously denying coverage for those mitigation costs—does not apply here. The Court has reviewed those cases and determined that, where discussed, each involved insurance policies that provided first-party coverage for damage or loss to the insured property.[1]

---

[1] *See Spurgeon v. Certain Underwriters at Lloyd's, London*, 2008 U.S. Dist. LEXIS 146, at *5, *10 (N.D.W. Va. 2008) (holding insurer "responsible for the towing and storage charges as a matter of law" when insured "purchased physical damage comprehensive coverage and physical damage collision coverage" by virtue of policy provision that "impose[d] a duty upon the insured to take all reasonable steps to protect the covered auto from further loss or damage and any such other or further loss or damage due directly or indirectly to the [insured]'s failure to protect shall not be recoverable hereunder.") (internal quotation marks and alterations omitted); *Hulsing v. Iowa Nat'l Mut. Ins. Co.*, 329 N.W.2d 5, 8 (Iowa 1983) (plaintiff/insured entitled to damages including the cost of towing damaged equipment, under policy that covered losses to the equipment); *Aetna Casualty & Surety Co. v. Eberheim*, 556 A.2d 1067, 1067-68 (Conn. Super. Ct. 1988) (holding, as a matter of equity, "the insurer should be held liable for" the

Progressive also notes that two recent Kennebec County Superior Court decisions held that a duty to protect provision does not impose a reciprocal duty upon an insurer to cover towing and storage expenses absent first-party coverage for damage to the insured auto under the policy. *See Northern New England AAA v. Violette*, KENSC-AP-2071-0064, at 5 (Me. Super. Ct. Sept. 17, 2018); *Statewide Towing, Inc. v. Am. Millenium Ins. Co.*, KENSC-CV-2017-0087, at 5-6 (Me. Super. Ct. June 27, 2018). The Court has reviewed those decisions, and finds their reasoning persuasive on the question of liability under the "Duty to Protect" clause.

The Court concludes the "Duty to Protect" provision of the Policy (*see* SF ¶ 24) did not obligate Progressive to pay towing, storage, or any other costs reflected in the underlying final judgment award in light of the limited third-party coverage provided, and express exclusion of first-party coverage for the insured auto, under Part I of the Policy (*see* SF ¶¶ 22-23, 25).

---

costs of salvaging an insured boat when to policy insured against "all accidental losses or damages to the covered property[.]") (internal quotation marks omitted); *State Farm Mut. Auto. Ins. Co. v. Toro*, 316 A.2d 745, 746, 749 (N.J. Super. Ct. 1974) (holding towing and storage costs covered under uninsured motorist provision of insurance contract that provided coverage for "all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle."); *Myers v. American Indem. Co.*, 457 S.W.2d 468, 470-71 (Mo. App. 1970) (holding "towing and storage charges" were covered under a policy where the insured "was obligated to protect the damaged vehicle" and insurer was obligated "to indemnify the policyholder for loss caused by collision to the policyholder's automobile[.]"); *Harper v. Pelican Trucking Co.*, 176 So. 2d 767, 772-73, (La. App. 1965) (holding "an insured is entitled to reimbursement of the expenses incurred in protecting his insurer against loss by application of general principles of law and equity" where insurance policy provided coverage for loss or damage to insured property but excluded "loss or damage . . . [c]aused by the neglect of the [insured] to use all reasonable means to save and preserve the property at and after any disaster insured against[.]"); *City Coal & Supply Co. v. American Auto. Ins. Co.*, 133 N.E.2d 415, 416-18, (Ohio App. 1954) (insured entitled to recover costs expended to recover and tow insured cement mixer from scene of accident when insurance policy provided coverage "for any direct and accidental loss of or damage to the automobile" and imposed a duty upon the insured to "[p]rotect the automobile, whether or not the loss is covered by this policy, and any further loss due to the insured's failure to protect shall not be recoverable under this policy; reasonable expense incurred in affording such protection shall be deemed incurred at the company's request.") (internal quotation marks omitted); *Parodi v. Universal Ins. Co.*, 26 A.2d 557, 558 (N.J. Super. Ct. 1942) ("The plaintiff was insured against damage to his car by reason of collision. . . . The towing charge was, of course, necessary to protect the car from further damage, and this the insured was obliged under the policy to do.").

## C. Coverage Under the "Property Damage" Provisions

The parties do not dispute that Progressive is obligated to "pay damages . . . for . . . property damage . . . for which an insured becomes responsible because of an accident arising out of the . . . use of that insured auto[,]" or that the Policy explicitly excluded coverage for any "property damage to . . . any property owned by . . . the insured[.]" (*See* SF ¶¶ 22, 25.) The crux of their dispute is whether the costs associated with site clean-up and remediation, and recovery, towing and storage of the Truck following the December 20, 2016 accident constitute "property damage," defined as "damage to tangible property including . . . the costs resulting from loss of use of the damaged property." (SF ¶ 23.)

In order to prevail, NWI must establish that "damage" to tangible property owned by a person besides Muluya occurred as a result of the operation of the Truck, and that Muluya "bec[ame] responsible" for those damages by operation of the final judgment rendered against him. NWI contends the unidentified owner of the real property into whose ditch the Truck crashed ("the Ditch Owner") suffered "property damage" as a result of (1) the diesel fuel leaking from the Truck's tank and onto the ground, (2) the diminished value of the property caused by the crashed and disabled Truck's presence there, (3) the lost use of the property caused by the crashed and disabled Truck's presence there, and (4) the debris from the Truck that was littered about the scene of the accident.

The Policy defines "property *damage*" as "*damage* to tangible property," a recursive definition that creates an ambiguity as to the meaning of the word "damage." The Court is compelled to resolve that ambiguity in favor of the insured, and in turn, NWI. In this context, "damage" can reasonably be interpreted as some measure of the harm or loss to a piece of tangible property. *See* Black's Law Dictionary (10th ed. 2014) (defining "damage" as "loss or

7

injury to person or property[.]"); Bouvier Law Dictionary Desk Edition (Wolters Kluwer 2012) (defining "damage (harm or loss)" as "Loss to a person or property. Damage is the measurable loss or injury occurring to a person or a person's property or interests. . . .").

A person whose real property is harmed by another is entitled to damages measured by the cost of restoring the property to the condition it was in before the harm occurred. *See, e.g.*, *Leavitt v. Continental Tel. Co.*, 559 A.2d 786, 788 (Me. 1989) ("restoration costs have been deemed an appropriate, although not exclusive, remedy for injury to real property.") (citation omitted); Horton & McGehee, *Maine Civil Remedies* § 4-3(c)(7) at 67-68 (4th ed. 2004) (one of "the two prevalent measures of damage to real or personal property [is] . . . the cost of repairing or restoring the property to its condition before the injury.").

As a result of the December 20, 2016 accident, the Ditch Owner's property was damaged when it was altered from its original condition by the presence of a disabled, fuel-leaking truck. The extent of that property damage can be measured as the cost of restoring the property to its previous condition through containment of the fuel leak, removal of the accident debris, and recovery of the Truck from the ditch and towing it away. That measure of damages—the cost of those restoration services—is what $7,440 of NWI's judgment against Muluya represents. (*See* SF ¶ 21.)

Having established that $7,440 of covered "property damage" occurred, the question then becomes whether Progressive can be held liable to NWI for that measure of damages. "Whenever any person . . . recovers a final judgment against any other person for ["accidental damage to property" under 24-A M.R.S. §] 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment . . . ." 24-A M.R.S. § 2904. In the underlying civil action, NWI was awarded damages for Muluya's non-payment for services

rendered, not for "accidental damage to property." Thus, under the plain language of section 2904, Progressive is not liable to NWI for any portion of the damages awarded in the final judgment against Muluya.

## III. Conclusion & Order

In light of the foregoing, the Court concludes that NWI cannot collect any portion of its final judgment against Muluya for unpaid services from Progressive under 24-A M.R.S. § 2904. Accordingly, the entry shall be:

"Defendant Progressive Casualty Insurance Co.'s Motion for Summary Judgment is GRANTED. Plaintiff National Wrecker, Inc.'s Motion for Summary Judgment is DENIED."

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

SO ORDERED.

Dated: 2/7/19

John O'Neil, Jr.
Justice, Maine Superior Court

Entered on the Docket on: 2/7/19
Copies sent to the following parties/counsel on: 2/7/19
Attorney Bellito III   Attorney Poliquen

9